(27 Misc. Rep. 366.)

## MERRITT v. SMITH et al.

(Supreme Court, Special Term, New York County.   May, 1899.)

**1. CLAIMS TO LAND—ACTION TO DETERMINE—POSSESSION—OCCUPATION.**

A lot was fenced on all sides, and was used for pasturing horses and cows, and as a yard for them, and a haystack stood on it a considerable portion of each year.  The fence was badly torn to pieces each winter by boys coming there to skate, but during grazing season the breaks were repaired sufficiently to protect the grass and hay.  *Held*, in an action to determine claims to the property, that the occupation was sufficient to show possession.

**2. SAME—KNOWLEDGE OF LESSEE.**

Under Code Civ. Proc. § 1639, subd. 2, requiring a complaint to determine claims to realty to show that the property for the preceding year had been in the possession of plaintiff, or those from whom he claims title, it is not essential that plaintiff knew of his grantor's possession through a lessee, or that the lessee knew of the transfer to plaintiff.

**3. SAME—ATTORNMENT.**

The fact that plaintiff's lessee attempted to attorn to defendant does not affect plaintiff's possession; such attornment being void under Real Property Law, § 194.

Action by Mary Merritt against B. Osborne Smith and others to compel the determination of a claim to real property.   Judgment for plaintiff.

G. M. Wright, for plaintiff.

Blair & Rudd, for defendant Smith.

M. T. Sharkey, for defendant Quinn.

BOOKSTAVER, J.   This action is brought, under sections 1638 to 1650 of the Code of Civil Procedure, to determine the defendants' claims to a piece of land in the borough of the Bronx.   The facts of the case are peculiar and interesting, as will appear from the following statement of the same, which is taken substantially from the brief of the defendants' counsel:   The original owner and source of title of both parties was one Elizabeth Gill, a widow with two children, who in 1859 perished, with her children, in a fire which consumed their dwelling.   If she survived them, her heirs took the property.   If they, or either of them, survived her, their heirs took the property.   Acting on the latter theory, their paternal uncle, Thomas Gill, and his wife, describing themselves as sole heirs, conveyed the property to Jacob T. Merritt, plaintiff's grandfather, in 1871.   Merritt and his wife conveyed to one Ruth Olivia Rudd in 1877.   Both these deeds were recorded, and Ruth Olivia Rudd is the common source of title of both parties to this action.   She in 1890 conveyed the property to Roland Merritt, Jacob T. Merritt's son, and the father of the plaintiff; and Roland Merritt in November, 1896, conveyed to the plaintiff.   Both these last two deeds were unrecorded up to the trial of this cause.   Meantime, Smith, a real-estate dealer, had learned of the Gill complication, and, deciding that the other title,—the one accruing through Elizabeth Gill's heirs on the theory that she survived her children,—was the true title, proceeded to acquire it by taking deeds from Henry Lanning and others, the

actual or supposed descendants of Elizabeth Gill. Finding the other title also on the record, and finding it vested apparently in Ruth Olivia Rudd, he also on the 15th day of February, 1896, obtained a quitclaim deed from her of all her interest in the property, and recorded this deed May 7, 1896; thus uniting in himself, as he supposed, both branches of the Elizabeth Gill title: Meantime Roland Merritt, in 1893 or thereabouts, before he had conveyed to his daughter, had called upon one Louis Lutz, a butcher, whose land adjoined the tract in suit on the north, and licensed him to use the property until sold, on condition of his keeping it fenced. This arrangement does not appear to have been communicated to the plaintiff; nor was the conveyance to her, or the fact that she had an interest in the premises, ever made known to Lutz. On the other hand, Smith, shortly after taking his deed from Ruth Olivia Rudd, also called on Lutz, stated that he was the owner of the property; and Lutz promptly made the same agreement with him as he had previously made with Merritt. Lutz continued to occupy and use the property substantially as he had used it theretofore until April 1, 1897, when plaintiff began this action.

Section 1639, above referred to, provides that:

"The complaint in such an action must set forth facts showing: * * * (2) That the property, at the commencement of the action was, and, for the one year next preceding, has been in his possession, or in the possession of himself and those from whom he derives his title, either as sole tenant or as joint tenant, or tenant in common with others."

Section 1640 provides that:

"If the defendant, in his answer, puts in issue the matters specified in subdivision second of the last section, and succeeds upon that defense, final judgment must be rendered in his favor, dismissing the complaint, and awarding to him costs against the plaintiff."

That is what the defendants did in this case, and in fact was all that was left for them to do. It is true that under section 1642 they might have set up title in themselves, but, if that had been done, the burden of proving such title would, under the provisions of the last-mentioned section, have been cast upon them. This they could not by any possibility have sustained, because there was, by reason of the circumstances under which the fire referred to occurred, never any means of knowing whether mother or children first perished, and our law does not supply this defect by retaining the old common-law presumptions as to survivorship. The vital question in the case is, consequently, whether the plaintiff can be credited with possession for one year preceding April 1, 1897, the day on which this action was commenced. The defendants contend that the occupation of the property by Lutz was not of such a character as to sufficiently show such possession. I am, however, of the contrary opinion. The lot was fenced about on all sides. It was used by him more or less for pasturing his horses and cows, and as a yard for them. A haystack stood upon it for a considerable portion of each year. It is true that the fence was badly torn to pieces each winter by the boys who came there to skate, the lots being low and flooded in winter. But it is equally undisputed that, with the recurrence of the season when

a fence was needed, the breaks were repaired, and it was restored so that it answered all the required purposes of protecting the grass and hay upon the lot. At all times there was enough of it standing to give notice of possession and occupancy, if not to exclude tres-passers.

It is further contended by the defendants that the possession of Lutz cannot inure to the benefit of the plaintiff, for two reasons: (1) Because it does not appear that he ever recognized her title, or was aware of the conveyance to her; and (2) because, when defend-ant went to him and claimed to have then become possessed of the title to the property, Lutz made the same arrangement for continuing in possession under the defendant. The answer to the first alleged reason is that the year of possession required by subdivision 2 of section 1639 is that of the plaintiff "and those from whom he derives his title." The purpose of this provision, as I construe it, is to credit a grantee with any possession held by or under his grantor when it comes to a controversy as to the validity of two conflicting chains of title. As to the second reason advanced, it loses sight of the principle which estops a tenant from disputing the title of a land-lord under whom he has gone into possession, or from claiming un-der any other title until he has renounced the former. In Balls v. Westwood, 2 Camp. 11, it was held that, where the defendant has come in under the plaintiff, he cannot show that the plaintiff's title has expired, unless he solemnly renounced the plaintiff's title at the time, and commenced a fresh holding under another person. In that case Lord Ellenborough said:

"You may as well attempt to move a mountain. You cannot controvert the continuance of the title of the person under whose demise you continue to hold. The security of landlords would be infinitely endangered if such a proceeding were permitted. Had the defendant, upon the premises being seized by the lord of the manor, disclaimed holding of the plaintiff, and entered afresh under the new landlord, we might now inquire into the validity of the seizure, and con-sider who is legally entitled to the premises."

What the tenant cannot do ought not to be permitted to another who attempts to base a claim upon an act forbidden to the tenant. The considerations that estop the tenant equally estop any one else making such an attempt. The remark of the great judge just quoted, that "the security of landlords would be infinitely endangered if such a proceeding were permitted," finds a most forcible illustration in the present case. If the contention of the defendant on this point were allowed to prevail, we should have a case where a landlord's title would be destroyed by such an unwarranted and secret act of the tenant, on whose possession and occupancy the landlord was all the time relying to keep alive and to protect his title. Besides this, where the relation is once established the possession of the tenant is that of the landlord (Bedlow v. Dry-Dock Co., 112 N. Y. 263, 19 N. E. 800); and in fact the relation could not, without the consent of the landlord, be broken by any act of the tenant, such as is shown here, because section 194 of the real property law provides that:

"The attornment of a tenant to a stranger is absolutely void, and does not in any way affect the possession of the landlord, unless made either: (1) With the consent of the landlord; or (2) pursuant to or in consequence of a judgment,

order, or decree of a court of competent jurisdiction; or, (3) to a mortgagee, after the mortgage has become forfeited."

In this case there does not seem to be any evidence that Lutz had any reason for supposing that Smith claimed adversely to Merritt. He would, on the contrary, naturally assume that Smith had acquired the Merritt title. Furthermore, I believe from all the evidence that the defendant Smith, before taking the conveyances he relies upon, if he did not have actual knowledge of the Merritt claim to the property, at least had knowledge of sufficient facts to put him upon inquiry that would have at once resulted in his obtaining exact information of the entire situation. It likewise follows from the fact that the plaintiff or her grantor had possession of the premises during all these years through the tenant, Lutz, that the conveyances under which the defendants claim were nullities, under section 225 of the real property law, which declares that "a grant of real property is absolutely void, if, at the time of the delivery thereof, such property is in the actual possession of a person claiming under a title adverse to that of the grantor." The defendants could not, therefore, in their own name, at least, stand upon such conveyances. Judgment should therefore be for the plaintiff, with costs.

Judgment for plaintiff, with costs.