## THE MAYOR AND CITY COUNCIL OF EAST ORANGE v. EDWARD .G. RICHARDSON, PROSECUTOR.

Argued February 24, 1904—Decided June 13, 1904.

1. The record of a proceeding in the Recorder's Court of East Orange for a violation of an ordinance shows simply that at the return of the summons "the defendant appeared and pleaded guilty, and paid the penalty of $10." *Quære.* Does this record show a conviction of the defendant, or any adjudication by which he is aggrieved?

2. A proceeding in the Recorder's Court of a city incorporated under the act of 1899 (*Pamph. L., p.* 283), resulting in a conviction of the defendant on his own confession, held reviewable by *certiorari,* following *Watson* v. *Plainfield,* 31 *Vroom* 263.

3. That the judgment was entered in figures and not in words at length, held a mere defect of form, not prejudicial to the defendant, and therefore furnishing no ground for reversal under *Pamph. L.* 1899, *p.* 297, § 34.

4. Section 44 of the City act of 1899 (*Pamph. L., p.* 283) declares that no ordinance shall be passed by the city council unless "advertised after introduction at least once in two newspapers for one week prior to final action thereon," and that no ordinance shall take effect "until five days after it shall have been published in two newspapers." *Held,* that the requirement of advertisement after introduction and prior to final action does not prohibit amendments of the ordinance from being made after such advertisement. *State* v. *Council of Newark,* 1 *Vroom* 303, and *Athletic Association* v. *New Brunswick,* 26 *Id.* 279, distinguished.

5. *Quære.* Where a defendant pleads guilty to a violation of a municipal ordinance, does he not thereby admit the legal adoption of the ordinance?

On *certiorari* to the Recorder's Court of East Orange.

Before Justices HENDRICKSON and PITNEY.

For the prosecutor, *Howe & Davis.*

For the city, *Philemon Woodruff.*

The opinion of the court was delivered by

PITNEY, J. This *certiorari* was sued out for the purpose of reviewing a supposed conviction had in the Recorder's Court of East Orange against the prosecutor for a violation of section 166 of the code of ordinances of that city. The record returned by the recorder shows a complaint, made in writing, under oath, against the prosecutor; a summons issued thereon, reciting the complaint, and requiring the prosecutor to appear before the recorder at a specified time and place to answer the complaint, and shows, further, a transcript of the recorder's docket, wherein, after recital of the complaint, and the summons and return thereof, there appears this entry, under a date corresponding with that specified in the summons for the appearance of the defendant, viz., "The defendant appeared and plead guilty and paid the penalty of $10." Subsequent entries show that a few days later the defendant's attorney moved that the case be reopened, on the ground of newly-discovered evidence, and because, when the defendant pleaded guilty, he did not understand his rights. After hearing, the application for reopening the case and for a new trial was refused. Of this action no complaint is now made.

Beyond the entry of the fact that the defendant appeared, pleaded guilty and paid the penalty, the record discloses no conviction of the defendant. It is difficult to perceive how this constitutes an adjudication by which he is aggrieved. As the prosecutor paid the penalty without being convicted— paid it voluntarily, so far as appears—the incident seems to be closed, and the record manifests rather a historical memorandum of the proceedings than an adjudication of the prosecutor's guilt.

Assuming, however, that it may be treated as the record of a conviction, its attack by *certiorari* is met by the insistment that an appeal to the Court of Common Pleas is made by statute the exclusive primary method of review. East Orange is incorporated under "An act for the incorporation of cities, and providing for their officers, government and

powers," approved March 24th, 1899. *Pamph. L., p.* 283. The jurisdiction, powers and duties of the recorder are prescribed by section 32 of this act. Section 34 declares: "Every conviction for violating a city ordinance had before the recorder, either with or without a jury trial, may be reviewed by appeal to the Court of Common Pleas of the county in the same manner and upon the same terms as appeals are or may be taken from courts for the trial of small causes, and in case the judgment appealed from shall be imprisonment, the said recorder or any judge of the Court of Common Pleas may admit to bail the party appealing during the pendency of his appeal; but no judgment for the violation of any ordinance shall be reversed for any imperfection, omission, defect in or lack of form, nor for any error except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits."

The inherent jurisdiction of the Supreme Court to review by *certiorari,* or equivalent proceeding, the judgments of inferior tribunals, is placed by the constitution beyond abridgment by the legislature. The acts constituting the small cause court, in providing for appeals to the Common Pleas in certain cases, have, at the same time, expressly prohibited a direct review of the judgment of the justice by the Supreme Court or Circuit Court, where the justice has jurisdiction, and where an appeal is given to the Common Pleas. *Gen. Stat., p.* 1882, § 96; *Pamph. L.* 1903, *p.* 279, § 93. This prohibition of a direct review by *certiorari* has been sustained on the ground that the Supreme Court ultimately supervises the action of the appellate tribunal, so that, in effect, the legislative provision amounts to a mere regulation of the remedy. *Traphagen* v. *Township of West Hoboken,* 10 *Vroom* 232, 236; *Flanagan* v. *Plainfield,* 15 *Id.* 118, 122.

It requires clear language, however, to evince a legislative intent to preclude a citizen from what would otherwise be his undoubted right to a direct review by *certiorari,* and to substitute for it a primary appeal to the Common Pleas, followed by a review of the proceedings in that court by

*certiorari* from the Supreme Court. *Ritter* v. *Kunkle,* 10 *Vroom* 259, 261. See, also, *State* v. *Falkinburge, 3 Gr.* 320, 322.

The act of 1899 (unlike the Justices' Court act) contains no express prohibition of a direct review by *certiorari.* It simply renders the proceedings in the Recorder's Court conformable, in general, to those in the small cause court, and provides a review "by appeal to the Court of Common Pleas in the same manner and upon the same terms as appeals are taken from courts for the trial of small causes." Under somewhat similar language, found in an amended charter of the city of Plainfield and in one of its supplements (*Pamph. L.* 1872, *p.* 1142, § 21, &c.; *Pamph. L.* 1873, *p.* 483, § 8), it was said, in *Flanagan* v. *Plainfield,* 15 *Vroom* 118 (at *p.* 121), that the remedy by appeal was exclusive. See, also *Watson* v. *Plainfield,* 31 *Id.* 260. But the point seems not necessarily to have been involved in either of those cases. Nor does it seem to be properly raised in the present case. Section 34 of the act of 1899 gives an appeal only in the same manner and upon the same terms as appeals are taken from the small cause court. But appeals do not lie from the judgment of the small cause court if given by confession. *Gen. Stat., p.* 1891, § 138; *Pamph. L.* 1903, *p.* 276, § 80. Now, if the record before us discloses a judgment at all, it is a judgment by confession, as held in *Watson* v. *Plainfield,* where the opinion (31 *Vroom,* at *p.* 263) states: "If it is entered on an acknowledgment of a violation of an ordinance, it is a judgment by confession, and may be reviewable by *certiorari.*"

Turning, now, to the reasons assigned by the prosecutor for reversal of the so-called conviction, the first is that there was no legal trial, and the third that there was no legal evidence upon which to base prosecutor's conviction. But a plea of guilty obviates the necessity of a trial and constitutes legal evidence upon which to base conviction. According to the record, the defendant thus pleaded when he appeared at the time and place specified in the summons. The case is

not at all parallel to *Watson* v. *Plainfield,* 31 *Vroom* 260, where, after a plea of not guilty was entered and the cause postponed until a later day for trial, the defendant, before the trial day, admitted his guilt to the city judge, who afterwards made that admission the basis of entering judgment of conviction. In the present case, also, the complaint sufficiently specifies the violation of the ordinance, and so the case is not parallel to *Bray* v. *Damato,* 41 *Vroom* 583.

Another reason assigned for reversal is that the judgment is entered in figures, and not in words at length. But this is a mere defect of form, not prejudicial to the defendant, and so furnishes no ground for reversal. *Pamph. L.* 1899, *p.* 297, § 34.

The remaining reasons set up that the code of ordinances of East Orange, and section 166 thereof, are invalid because never legally adopted by the city council; because not advertised, after introduction, in two newsapers for one week prior to final action thereon; because passed without notice of advertisement of the time or place when the same would be considered or passed; because passed at a special meeting, without previous notice, and because it does not appear on the face of the proceedings that the code of ordinances was advertised as required by law. But are these not all matters of fact, that are conclusively admitted by the plea of guilty? This question has not been debated before us, and we do not propose to base our judgment upon it. It would seem, however, that although a local ordinance, passed under due legislative authority, becomes the law of the place, yet that the existence of such a local law and its terms, like the existence of a local custom, are matters of fact, to be pleaded and proved as such, and to be admitted by a plea of guilty.

The sworn complaint in the present case sets forth that on a certain date specified, at the city of East Orange, the prosecutor did violate an ordinance of said city entitled "Code of general ordinances of the city of East Orange," section 166, which said ordinance was approved on the 21st day of December, 1899, in the following manner, viz., in that the

said Edward G. Richardson did, on the date and at the place specified, conduct the business of a hackman, in that he did then and there solicit and convey a passenger or passengers from the said station without a license first obtained from the mayor and council of the said city of East Orange for the purpose of conducting said business as a hackman, in violation of section 166 of said ordinance. This, it would seem, necessarily includes the averment that such a code of ordinances was approved, on the date mentioned, by the public body having legal authority to establish such ordinances, and also to include, by reasonable intendment, the averment that section 166 of that code contained a prohibition against conducting the business of a hackman in the manner specified without a license, and that by doing the acts attributed to him in the complaint the prosecutor was guilty of a violation of the ordinance. His plea of guilty would seem to include a confession, not merely that he did the acts specified, but that the ordinance was in truth approved as mentioned, including an admission of all precedent facts necessary to its due approval.

Assuming, however, that the question of the legal adoption of the ordinance is now open for review, we will deal with the question that had been principally discussed by counsel. Section 45 of the act of 1899, already referred to, authorizes the council of the city to adopt ordinances for many purposes relating to the police regulation of the city, and, among other things, to license and regulate hack, cab, omnibus and stage owners and drivers, carriages and vehicles used for the transportation of passengers and merchandise, and to fix the penalty for violation of any ordinance, which penalty shall be a fine not exceeding $50. No question is made but that the subject-matter of the ordinance, or of section 166 thereof, is within the general powers of the city council of East Orange. The objections of the prosecutor relate to the mode of its adoption. Section 44 of the act of 1899 declares: "No ordinance or by-law shall be passed by the city council unless the same shall have been introduced at a previous

special or stated meeting, and shall have been advertised, after introduction, at least once in two newspapers, one of which shall be printed and published in the city, for one week prior to final action thereon, and shall be agreed to by a majority of the members of the council; and no ordinance shall take effect until five days after it shall have been published in two newspapers, one of which shall be printed and published in the city, and if there be none, in at least one newspaper published in the county and circulating in the city."

The depositions taken herein disclose that the code of ordinances in question was adopted December 28th, 1899, and not on December 21st, the date specified in the sworn complaint. This variance, however, seems immaterial, and no point was made of it in argument. The code of ordinances was introduced in the council on December 12th, read by sections, amended in various particulars, and as thus amended was passed on first reading. The clerk was instructed to publish the code in two newspapers, one of which was published in East Orange. It was published in full in both newspapers, in the issues of December 14th and December 16th, respectively, accompanied with notice that at a meeting of the council, held on the 12th, the code was introduced and passed on first reading. The same publication was repeated in the same newspapers one week later. On December 21st, another special meeting of the council was held, at which the code was again taken up, read by sections and amended in certain particulars, and as amended was passed on second reading. As thus amended, it was published in an East Orange newspaper on December 28th. On the latter date another special meeting of the council was held, at which the code, with amendments, was passed on third reading and ordered published in the same two newspapers. No question is made but that it was properly published after its adoption. The insistment is that by the proper construction of section 44 of the act of 1899 the ordinance required publication, in its final form, at least once in two newspapers, and

at least one week prior to final action thereon. As the only publication of the code in its final form, prior to its final passage, was in one newspaper on December 28th, it is claimed the ordinances are totally void. In our view, however, this argument is based on an erroneous interpretation of section 44, and ignores the distinction between advertisement after introduction and prior to final action, on the one hand, and publication after final passage, on the other hand. The advertisement before final action is manifestly intended to give publicity to the fact that an ordinance has been introduced and is under consideration by council, and that it will not be finally acted upon until after the lapse of a week. It may be conceded that the advertisement must include notice of the subject and general scope of the ordinance. But we think it would be going too far to say that such advertisement forecloses the council from exercising the ordinary legislative function of amendment of the ordinance before final action thereon. One of the very purposes of the advertisement would seem to be to enable citizens and others interested to suggest changes in the proposed ordinance. Such amendments, in orderly course, are made either while a proposed ordinance is under consideration by committee, or, at any rate, before it passes the council on second reading. The beneficent purpose of the advertisement would be to a large extent defeated by adopting a construction that would prohibit amendments after the advertisement. In *State* v. *Council of Newark,* 1 *Vroom* 303, and *Athletic Association* v. *New Brunswick,* 26 *Id.* 279, the municipal charters required that the ordinances in question should be published between second and third readings. It was held that those charters contemplated that the common council, in their legislative capacity, act in accordance with the well-established rules of parliamentary bodies, and that amendments are made and the proposed ordinance perfected on second reading, so that publication between second and third reading would inform parties interested of the precise character of the ordinance. In *City of Hoboken* v. *Gear,* 3 *Dutcher* 265, 274, and *Stuhr* v. *Hoboken,*

18 *Vroom* 147, the point presented was the necessity of publishing the ordinance after its passage and before it should take effect. These two cases are not at all in point. *Railroad Company* v. *Cape May,* 29 *Id.* 565, related to an ordinance forfeiting vested rights once acquired in the streets. Such an ordinance, of course, partakes of the character of a judicial determination, and the party affected is entitled to notice. The ordinance now under consideration affected no property right previously acquired, and partook solely of the character of police regulation. In passing it, the council was exercising a purely legislative function.

Section 44, as it seems to us, draws a clear distinction between advertisement before passage and the publication after passage of the ordinance. The latter is intended to promulgate the enactment in its finished form. Such promulgation would hardly be necessary if the same ordinance, in precisely the same form, had in all cases been previously promulgated. As we take it, the advertisement, after introduction and prior to final action, is designed for the purpose of giving public notice that a proposed measure of legislation is under consideration, according to the usual mode of legislative action. The proofs render it clear that such notice was given by the advertisement of the code as introduced, which was made in two newspapers, on December 14th and 16th, respectively, one of which was printed and published in the city of East Orange. The code contained one hundred and seventy-nine sections, or more. The amendments of December 21st were few in number, and, so far as the case shows, they made no material change in the code as introduced. Three verbal amendments were made in section 166, but so far as appears had not the effect of materially changing its provisions. The prosecutor has not seen fit to embody in the case presented to us any copy of the entire code, either as originally introduced or as finally passed. If it is impossible for us to appreciate the precise effect of the amendments actually made, the prosecutor is responsible. Upon the whole,

however, we think the case fairly shows that the code of ordinances was duly advertised previous to final action thereof.

As to the objection that the code was passed without any advertisement of the time or place when it would be considered or passed, it is sufficient to say that the act of 1899 contains no such requirement. And as the ordinance affected no property right, such notice was not necessary, in the absence of statutory requirement. *Rutgers Athletic Association* v. *New Brunswick,* 26 *Vroom* (at *p.* 284).

The writ of *certiorari* will be dismissed, with costs.