ILLINOIS STEEL COMPANY, Appellant, vs. BUDZISZ and others, Respondents.

*January 28—May 11, 1909.*

*Title: Adverse possession: Statutes: Landlord and tenant: Transition of title: Possession of purchaser from tenant: Trespass: Disseisin: Presumptions: Rules of evidence: Estoppel.*

1. Under the provisions of secs. 4210, 4211, Stats. (1898)—defining adverse possession and its effect,—if A., having possession of real estate as tenant of B., the owner, in writing conveys the same to C., he having no notice of the relation of landlord and tenant as between A. and B., and C., under his conveyance, takes possession of the property, claiming title by no right except that purporting to be conferred by his writing, and remains in possession as an exclusive owner might, continuously for the full statutory period, C. thereby acquires title in fact, good as against the former owner B., regardless of the relations existing between A. and B. at the time C. obtained his conveyance, or the provisions of sec. 4216.

*On motion for a rehearing:* Syllabus by MARSHALL, J.

2. The fundamentals of title by adverse possession for this state are embodied in the written law.

3. The common-law principles embodied in sec. 4216, Stats. (1898), with a ten-year limitation that neither a tenant nor any person claiming under him can efficiently claim possession adverse to the landlord, are subordinate to the statute rendering actual adverse possession for ten or twenty years, according to circumstances, efficient to accomplish a transition of title from the holder of the legal title to the adverse possessor.

4. A possession of realty, characterized by the relations of land-lord and tenant between the possessor and the owner, may be turned into adverse possession by a grantee of the tenant without termination of such relations by actual surrender to such owner.

5. A grantee of a tenant may terminate the relations of landlord and tenant and supersede them by adverse possession by such acts as will disseise the landlord actually or constructively.

6. Whenever the grantee of a tenant takes possession of the granted premises as owner under such circumstances as to bring home to the owner, if he pays reasonable attention to his affairs, knowledge of the defiance of his right, such grantee becomes a trespasser.

7. In the circumstances last stated, the owner cannot, at his election, treat the trespasser as his tenant. His legal remedy for the wrong is in trespass or ejectment.

8. When the condition stated in No. 6 shall have been created, full disseisin, efficiently initiating adverse possession under the written law, will be effected.

9. If the owner, in the circumstances last stated, permits the condition of disseisin to continue for the statutory period under sec. 4215, Stats. (1898), the presumption in his favor under sec. 4210 as possessor of the legal title, and under sec. 4216 of the statutes as to subordination of the possession to that of the true owner, will be superseded by the verity as to continuous disseisin for the statutory period requisite to a transition of the title to the disseisor.

10. The statutory rule under sec. 4216, Stats. (1898), that possession of realty by a grantee of a tenant is to be deemed the possession of the landlord, is not a legal or an equitable estoppel, but a rule of evidence to prevail till overcome by other evidence to the contrary, the same as the evidentiary rule under sec. 4210 and that under secs. 4211 and 4213, Stats. (1898).

11. Secs. 4210, 4211, 4213, 4215, and 4216, Stats. (1898), make this Code system for the establishment of title: Starting with the common-law rule that proof of actual possession *prima facie* proves title; that is subject to displacement under the first section by proof of legal title in the adversary of the possessor; that is subject to displacement by actual possession under color of title for ten years under the second section, or without such color for twenty years, under the third section; that is subject to displacement under the fifth section by proof that the possession commenced under the owner by creation of the relations of landlord and tenant; and that is subject to conclusive displacement under the fourth section by proof that after the

relations aforesaid commenced they were superseded by a dis-
seisin as indicated in No. 6 and a continuation thereof for the
statutory period as suggested in No. 9.

12. If a person takes possession of premises as owner under a con-
veyance, in form, in fee from a tenant the nature of his pos-
session, as to whether adverse or subordinate to the right of
the true owner, is referable to his deed and the circumstances
characterizing his conduct, as to whether such as to challenge
the attention of the owner of the defiance of his right, not to
the real right of the grantee.

BARNES and TIMLIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action in ejectment.

The issues litigated upon the trial concerned, in the main,
whether defendant *August Budzisz* was, at the time of the
commencement of the action, the owner of the premises in
dispute by reason of having been for ten years theretofore,
uninterruptedly, in adverse possession thereof, under claim of
title exclusive of any other right, founding such claim upon a
written instrument as being a conveyance of the premises,
satisfying all the essentials of title by adverse possession un-
der secs. 4210, 4211, 4212, 4215, Stats. (1898). No other
issue and no other question, except such as bear on that issue,
need be considered on the appeal.

There was evidence on the following points: July 1, 1887,
Frank Otto, being possessed of the disputed premises, the
then owner of the paper title duly leased in writing the same
to him for a period of five years, at a yearly rental of $3, pay-
able in advance, the lessee being privileged to remove all
buildings, erected by him before or during the term, within
six months from the date of service upon him of notice to va-
cate, as provided in the lease. The lease was signed by both
parties thereto, and fully executed in every respect, and the
relations of landlord and tenant between the parties were duly
established. The same existed at the time of the conveyance
to *August Budzisz,* hereafter stated, but not to his knowledge.

Plaintiff succeeded to the paper title to the property before the commencement of this action and was the owner thereof, except as affected by defendants' rights, ever thereafter.    In August, 1887, by deed in form, as defendants claimed, Otto conveyed the premises to *August Budzisz,* he being ignorant of the relation of the grantor of the property, as before indicated.    The only conveyance to said *Budzisz,* as plaintiff claimed, was of the building and removable improvements. The instrument of conveyance was not produced upon the trial.    Such circumstances were established, in the judgment of the circuit court, as rendered parol proof of the contents of the instrument proper, and such proof, competent as the court ruled, was admitted.

The jury decided in defendants' favor, on all points essential to title in *August Budzisz* by adverse possession, unless the relations of landlord and tenant between Otto and the owner of the patent title were impressed upon the rights obtained by *Budzisz,* perpetuating the same, as between him and such owner, and continuing into, if not through, the claimed period of adverse possession.

Judgment was rendered in defendants' favor on the verdict, the question of law being decided in their favor.    The plaintiff appealed.

For the appellant there was a brief by *John H. Paul* and *Kronshage, McGovern & Fritz,* attorneys, and *Walter D. Corrigan,* of counsel, and a supplemental brief signed *John H. Paul, Kronshage, McGovern, Goff, Fritz & Hannan,* attorneys, and *Walter D. Corrigan,* of counsel, and oral argument by *O. M. Fritz* and *Theodore Kronshage.*    They contended, *inter alia,* that the court committed an error in disregarding the elementary rules (a) that a lessee can neither deny the title of lessor nor claim to hold possession adversely to him; (b) that by accepting possession under a lease a tenant recognizes the title and possession of the lessor and is estopped to dispute either; (c) and that when once this relation of land-

lord and tenant is established it attaches to all succeeding to·
the possession through or under the lessee, and such successor
is bound by the acts of his predecessor.    Sec. 4216, Stats.
(1898); 1 Cyc. 1058, 1059; 1 Am. & Eng. Ency. of Law
(2d ed.) 810, 811; *Pulford v. Whicher,* 76 Wis. 555; *Emer-
ick v. Tavener,* 9 Grat. 220, 223, 58 Am. Dec. 217; *Quinn v.
Quinn,* 27 Wis. 168, 170; *Johnson v. Tucker,* 136 Wis. 505,.
117 N. W. 1002; *Jackson v. Davis,* 5 Cow. 123, 129; *Jack-
son v. Scissam,* 3 Johns. 499; *Tompkins v. Snow,* 63 Barb..
525, 533; *Tilghman v. Little,* 13 Ill. 239, 241; *Doty v. Bur-
dick,* 83 Ill. 473, 477; *Phillips v. Rothwell,* 4 Bibb, 33;
*Campbell v. Shipley,* 41 Md. 81; *Standley v. Stephens,* 66·
Cal. 541, 6 Pac. 420; *Bannon v. Brandon,* 34 Pa. St. 263, 75
Am. Dec. 655; *Church v. Shultes,* 38 N. Y. Supp. 842;
*Cooper v. Smith,* 8 Watts. 536; *Anderson v. Darby,* 1 Nott &
McC. 369; *Thompson v. Felton,* 54 Cal. 547; *Harker v. Gus-
tin,* 7 Halst. 42; *Church v. Schoonmaker,* 115 N. Y. 570;.
*Whiting v. Edmunds,* 94 N. Y. 309, 314; *De Lancey v. Gan-
ong,* 9 N. Y. 9; *Jackson v. Davis,* 5 Cow. 123, 129; *Sands v.
Hughes,* 53 N. Y. 287, 293; *Bedlow v. N. Y. F. D. D. Co.*
112 N. Y. 263, 287; *Bradt v. Church,* 110 N. Y. 537, 543.
The court erred in holding the vague and flimsy evidence. of
defendants sufficient to establish the existence and contents of
"some written instrument as being a conveyance of the prem-
ises in question." *Edwards v. Noyes,* 65 N. Y. 125, 126; *Day
v. Philbrook,* 89 Me. 462; *S. C.* 85 Me. 90; *Bennett v. Waller,*
23 Ill. 97, 181; *Renner v. Bank of Columbia,* 9 Wheat. 581;.
*Appeal of Richards,* 122 Pa. St. 547; *Wakefield v. Day,* 41
Minn. 344, 43 N. W. 71; *Laster v. Blackwell,* 128 Ala. 143;
*Potts v. Coleman,* 86 Ala. 94; *Elyton L. Co. v. Denny,* 108·
Ala. 553; *Dagley v. Black,* 197 Ill. 53.    It is well established
that a conveyance can be color of title only as to the land
actually included—because actually described—in it.    The·
calls of a deed limit the right as a matter of law.    *Ill. S. Co.
v. Budzisz,* 106 Wis. 499, 513; *Hanna v. Palmer,* 194 Ill. 41,.

44; *Shackleford v. Bailey,* 35 Ill. 387; *Allmendinger v. Mc-Hie,* 189 Ill. 308, 311; *Brooks v. Bruyn,* 35 Ill. 392; *Ohio & M. R. Co. v. Barker,* 125 Ill. 303; *Graeven v. Dieves,* 68 Wis. 317; *Childs v. Nelson,* 69 Wis. 125, 135; *Sydnor v. Palmer,* 29 Wis. 226, 252; *Pepper v. O'Dowd,* 39 Wis. 538, 548; *McCann v. Welch,* 106 Wis. 142, 147; *McMillan v. Wehle,* 55 Wis. 685; *Whittlesey v. Hoppenyan,* 72 Wis. 140; *Sanborn v. French,* 22 N. H. 246; *Perry v. Perry,* 99 N. C. 270; *Williamson v. Tison,* 99 Ga. 791, 792; *Etowah, etc. M. Co. v. Parker,* 73 Ga. 51, 53; *Barker v. Southern R. Co.* 125 N. C. 598; *Davidson v. Arledge,* 88 N. C. 326; *Smith v. Fite,* 92 N. C. 319; *King v. Wells,* 94 N. C. 344; *Wheeler v. Spinola,* 54 N. Y. 377, 389; *Simpson v. Johnson* (Tex. Civ. App.) 44 S. W. 1076; *Goltermann v. Schiermeyer,* 111 Mo. 404; *Marshall v. Corbett,* 137 N. C. 555; *Newton v. Alexander* (Tex. Civ. App.) 44 S. W. 416; *Wilson v. Johnson,* 145 Ind. 40, 43 N. E. 930; *Bellows v. Jewell,* 60 N. H. 420; *Nichols v. New Eng. F. Co.* 100 Mich. 230; *Wray v. C., B. & Q. R. Co.* 86 Ill. 424; *Dubuque v. Coman,* 64 Conn. 475; *Louisville & N. R. Co. v. Boykin,* 76 Ala. 560; *Juneman v. Franklin,* 67 Tex. 411. In the following cases the descriptions as proved were held insufficient to constitute color of title: *Masterson v. Todd,* 6 Tex. Civ. App. 131, 24 S. W. 682; *Willis v. Burke,* 7 Tex. Civ. App. 239, 240, 27 S. W. 217; *Dickens v. Barnes,* 79 N. C. 490; *Cook v. Oliver,* 83 Tex. 559, 561, 19 S. W. 161; *Davis v. Stroud,* 104 N. C. 484, 10 S. E. 666; *Sydnor v. Palmer,* 29 Wis. 226, 252; *Sheppard v. Wilmott,* 79 Wis. 15; *Dhein v. Beuscher,* 83 Wis. 316; *Ablard v. Fitzgerald,* 87 Wis. 516; *Allis v. Field,* 89 Wis. 327; *Elofrson v. Lindsay,* 90 Wis. 203; *Fuller v. Worth,* 91 Wis. 406; *Ryan v. Schwartz,* 94 Wis. 403, 69 N. W. 178; *Pohlman v. Evang. L. T. Church,* 60 Neb. 364, 83 N. W. 201; *Evans v. Welch,* 29 Colo. 355, 68 Pac. 776, 779; *Messer v. Hibernia S. & L. Soc.* 149 Cal. 122, 84 Pac. 837; *Patton v. Smith,* 171 Mo. 231, 71 S. W. 187; *Albert Hanson L. Co. v. Angelloz,* 118

La. 861, 43 South. 529; *Cobb v. Simon,* 119 Wis. 597, 605. The court erred in admitting in evidence and refusing to strike out portions of a bill of exceptions in another case against other defendants not in privity with defendants herein. *Ill. S. Co. v. Bilot,* 109 Wis. 418; *Dunck v. Milwaukee Co.* 103 Wis. 371; *McGeoch v. Carlson,* 96 Wis. 138, 140; *Yale v. Comstock,* 112 Mass. 267; *Costigan v. Lunt,* 127 Mass. 354; *Howard v. Patrick,* 38 Mich. 795; *Deering v. Schreyer,* 88 App. Div. 457; *Loughry v. Mail,* 34 Ill. App. 523; *Charlesworth v. Tinler,* 18 Wis. 633, 635; *Norris v. Monen,* 3 Watts, 465; *Mygatt v. Coe,* 124 N. Y. 212, 11 L. R. A. 646; *Sherin v. Brackett,* 36 Minn. 152, 30 N. W. 551; *Boughton v. Van Valkenburgh,* 61 N. Y. Supp. 574; *Patton v. Pitts,* 80 Ala. 373; *Hartley v. Phillips,* 198 Pa. St. 9, 47 Atl. 929; *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 507–509. The court erred in excluding on cross-examination and for the purpose of impeachment statements and admissions against interest made by defendant during the course of a second adverse examination. *Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 113 N. W. 456; *Lilley v. Mut. Ben. L. Ins. Co.* 92 Mich. 153, 52 N. W. 631; *McGahan v. Crawford,* 47 S. C. 566, 578; *Carr v. Griffin,* 44 N. H. 510; *State v. Flynn,* 36 N. H. 64, 70; *Carter v. Beals,* 44 N. H. 408; *Smith v. Beadnell,* 1 Camp. 30; *Stockfleth v. De Tastet,* 4 Camp. 10; *Chase v. Debolt,* 2 Gilm. 371, 373; *Congleton v. Schreihofer* (N. J.) 54 Atl. 144; *Parker v. Chancellor,* 78 Tex. 524; *Chaddick v. Haley,* 81 Tex. 617, 620. There was like error regarding admissions made by him during the course of a first adverse examination which defendant refused to sign. *Clarke v. Sawyer,* 3 Sandf. Ch. 351; *Looker v. Looker,* 46 Mich. 68; *Mobley v. Hamit,* 1 A. K. Marsh. 590.

For the respondents there was a brief by *Fiebing & Killilea,* attorneys, and *Moritz Wittig* and *Henry J. Killilea,* of counsel, and oral argument by *Mr. Killilea* and *Mr. Wittig.* They contended, *inter alia,* that the defendant was not es-

topped by the alleged lease even if defendant or his predecessor had entered into possession under it. *Miller v. M'Brier,* 14 Serg. & R. 382, 384. Otto, defendant's predecessor, having been in possession of the premises for five years prior to the alleged lease, and neither he nor defendant having entered thereunder, defendant is not estopped from disputing the title of the plaintiff. *Ackerman v. Lyman,* 20 Wis. 454; *Central M. Co. v. Hart,* 124 Mass. 123, 125; *Preston v. Hawley,* 101 N. Y. 586, 588; *Congregation v. Miles,* 4 Watts, 146, 152; *Hamilton v. Marsden,* 6 Binn. 45; *Miller v. M'Brier,* 14 Serg. & R. 384; *Moore v. Smead,* 89 Wis. 558; *Quinn v. Quinn,* 27 Wis. 168; *Watts v. Owens,* 62 Wis. 512; *McCann v. Welch,* 106 Wis. 142; *Sizer v. Clark,* 116 Wis. 534; *Pulford v. Whicher,* 76 Wis. 555; *Emerick v. Tavener,* 9 Grat. 220, 224; *Miller v. Williams,* 15 Grat. 213, 222; *Swann v. Thayer,* 36 W. Va. 46, 52; *Lakin v. Dolly,* 53 Fed. 333, 339, 340; *Tewksbury v. Magraff,* 33 Cal. 237, 241; *Shultz v. Elliott,* 11 Humph. 183, 187; *Hammons v. McClure,* 85 Tenn. 65, 2 S. W. 37; *Swift v. Dean,* 11 Vt. 323, 34 Am. Dec. 693; *Carter v. Marshall,* 72 Ill. 609; *Bigelow, Estoppel,* 399, 409, 427; *Reynolds v. Iron S. M. Co.* 116 U. S. 687, 688; *Doolan v. Carr,* 125 U. S. 618, 629; *Gleim v. Rise,* 6 Watts, 44; *Hayne v. Maltby,* 3 Term R. 438, 441; *Jackson v. Rowland,* 6 Wend. 666; *Phillips v. Pearce,* 5 B. & C. 433; *Reay v. Cotter,* 29 Cal. 168; *Cornish v. Searell,* 8 B. & C. 471; *Glen v. Gibson,* 9 Barb. 634, 638; *McConnell v. Bowdry's Heirs,* 4 B. Monr. 392; *Jackson v. Ayers,* 14 Johns. 224; *Hall v. Butler,* 10 Ad. & El. 204; *Ingraham v. Baldwin,* 9 N. Y. 45; *Brown v. Dysinger,* 1 Rawle, 408; *Swift v. Dean,* 11 Vt. 323, 325; *Chettle v. Pound,* 1 Ld. Raym. 746; *Rogers v. Pitcher,* 6 Taunt. 202; *Gravenor v. Woodhouse,* 1 Bing. 38; *Jackson v. Cuerden,* 2 Johns. Cas. 353; *Jackson v. Spear,* 7 Wend. 401; *Davis v. McGrew,* 82 Cal. 135; *Baldwin v. Temple,* 101 Cal. 396; *Hall v. Benner,* 1 Pen. & W. 402, 21 Am. Dec. 394; *Berridge v. Glassey*

(Pa.) 7 Atl. 749; *Hockenbury v. Snyder,* 2 Watts & S. 240, 249; *Baskin v. Seechrist,* 6 Pa. St. 154, 163; *Mays v. Dwight,* 82 Pa. St. 462, 464; *Hamilton v. Marsden,* 6 Bin. 45; *Brown v. Dysinger,* 1 Rawle, 408, 415; *Koontz v. Hammond,* 62 Pa. St. 177; *Cramer v. Carlisle Bank,* 2 Grant, 267; *Washington v. Conrad,* 2 Humph. 562; *Hammons v. McClure,* 85 Tenn. 65, 2 S. W. 37; *James v. Patterson,* 1 Swan, 309, 55 Am. Dec. 737; *Vance v. Johnson,* 10 Humph. 214, 219; *Redmond v. Bowles,* 5 Sneed, 547, 552; *Fain v. Headerick,* 4 Coldw. 327, 334; *Gudger v. Barnes,* 4 Heisk. 570; *Shew v. Call,* 119 N. C. 450; *England v. Slade,* 4 T. R. 682; *Doe v. Ramsbotham,* 3 Maule & S. 516; *Rogers v. Pitcher,* 1 Marsh. 541; *Phillips v. Smoot,* 1 Mackey, 478; *Blankenship v. Blackwell,* 124 Ala. 355, 82 Am. St. Rep. 175; 27 South. 551; *Fuller v. Sweet,* 30 Mich. 237, 240, 241; *Clary v. O'Shea,* 72 Minn. 105, 75 N. W. 115; *Petterson v. Sweet,* 13 Ill. App. 255; *Claridge v. Mackenzie,* 4 M. & G. 143; *Evans v. Bidwell,* 76 Pa. St. 497; *Anderson v. Smith,* 63 Ill. 126, 127; *Chandler v. White,* 84 Ill. 435, 436; *Flower v. Elwood,* 66 Ill. 438, 447; *Davidson v. Young,* 38 Ill. 145, 152; *Gregory v. Doidge,* 3 Bing. 474; *Jew v. Wood,* Craig & P. 185; *Franklin v. Merida,* 35 Cal. 558; *Ireton v. Ireton,* 59 Kan. 92, 52 Pac. 74; *Sands v. Hughes,* 53 N. Y. 287, 289; *Chase v. Dearborn,* 21 Wis. 57, 61; *Drake v. Cunningham,* 111 N. Y. Supp. 199; *Bedlow v. N. Y. F. D. D. Co.* 112 N. Y. 263; *Jones v. Reilly,* 174 N. Y. 97; *McAusland v. Pundt,* 1 Neb. 211, 249. Even if plaintiff had title, defendant was not estopped from showing he entered into possession under color of title and held adversely for the statutory period. *Lawton v. Howe,* 14 Wis. 241, 247; *De Pere Co. v. Reynen,* 65 Wis. 271, 274, 275; 1 Cyc. 1060, 1061; *Dikeman v. Parrish,* 6 Pa. St. 210, 225, 47 Am. Dec. 455; *Townsend v. Boyd,* 217 Pa. St. 386; *Lampman v. Van Alstyne,* 94 Wis. 417, 429; *McCann v. Welch,* 106 Wis. 142, 148; *Hatch v. Lusignan,* 117 Wis. 428; *Swann v.*

*Thayer,* 36 W. Va. 46, 52; *State v. Lloyd,* 133 Wis. 468, 473; *Reitler v. Lindstrom,* 126 Wis. 562, 565; *Ill. S. Co. v. Bilot,* 109 Wis. 418; *Ill. S. Co. v. Budzisz,* 119 Wis. 580, 585; *Ill. S. Co. v. Jeka,* 123 Wis. 419, 428; *Pitman v. Hill,* 117 Wis. 318; *Wollman v. Ruehle,* 104 Wis. 603, 606; *Kurz v. Miller,* 89 Wis. 426, 433; *Bartlett v. Secor,* 56 Wis. 520, 530; *Meyer v. Hope,* 101 Wis. 123, 128; *Pepper v. O'Dowd,* 39 Wis. 538, 543; *Quinn v. Quinn,* 27 Wis. 168; *Watts v. Owens,* 62 Wis. 512; *Moore v. Smead,* 89 Wis. 558, 564; *Sizer v. Clark,* 116 Wis. 534, 541; *Smith v. C., M. & St. P. R. Co.* 124 Wis. 120, 123; *Peyton v. Stith,* 5 Pet. 485, 492; *Waldon v. Bodley,* 14 Pet. 156, 162; *Ricard v. Williams,* 7 Wheat. 59, 117; *Roberts v. Decker,* 120 Wis. 102, 109; *Ackerman v. Lyman,* 20 Wis. 454; *Willison v. Watkins,* 3 Pet. 43, 49; *Lawton v. Howe,* 14 Wis. 241, 247; *Gunsolus v. Lormer,* 54 Wis. 630, 631, 632; *Hamachek v. Duvall,* 135 Wis. 108, 115 N. W. 634; *Holridge v. Gillespie,* 2 Johns. Ch. 30, 33; *Galloway v. Finley,* 12 Pet. 264; *Wilson v. Smith,* 5 Yerg. 379, 398; *Officer v. Murphy,* 8 Yerg. 502; *Morgan's Heirs v. Boone's Heirs,* 4 B. Mon. 291; *Connelly's Heirs v. Chiles,* 2 A. K. Marsh. 242; *Thredgill v. Pintard,* 12 How. 24; *Jackson v. Vincent,* 4 Wend. 633; *Jackson v. Collins,* 11 Johns. 1; *De Lancey v. Ganong,* 9 N. Y. 9; *Jones v. Reilly,* 174 N. Y. 97; *Roebke v. Andrews,* 26 Wis. 311; *Lamoreux v. Huntley,* 68 Wis. 24, 30, 33, 31 N. W. 331; *Griswold v. Nichols,* 126 Wis. 401, 403, 105 N. W. 815; *Evans v. Enloe,* 70 Wis. 345. The court did not err in excluding the alleged first and second adverse examinations had under sec. 4096, Stats. (1898). Ch. 29, Laws of 1899; ch. 244, Laws of 1901; ch. 367, Laws of 1907; *Phipps v. Wis. Cent. R. Co.* 133 Wis. 153; *First Nat. Bank v. Wood,* 26 Wis. 500, 503; *Smith v. C., M. & St. P. R. Co.* 124 Wis. 120, 123, 124; *Stockfleth v. De Tastet,* 4 Camp. 10, 11; *Robson v. Alexander,* 1 M. & P. 448, 452; *Groenvelt v. Burrell,* 1 Ld. Raym. 253; *Legatt v. Tollervey,* 14 East, 302; *Smith v. Beadnell,*

1 Camp. 30; *Eisenmeyer v. Sauter,* 77 Ill. 515; 4 Ency. of
Ev. 431, 432; *Shepherd v. Snodgrass,* 47 W. Va. 79, 34 S. E.
879; *Herman v. Schlesinger,* 114 Wis. 382; *Ferguson v.
Truax,* 136 Wis. 637, 118 N. W. 251; *Williams v. Brown,*
137 Mich. 569, 100 N. W. 786, 787; *Shephard v. State,* 88
Wis. 185; *Hughes v. C., St. P., M. & O. R. Co.* 122 Wis.
258, 269; 1 Am. & Eng. Ency. of Law (2d ed.) 716, n. 3;
*Schearer v. Harber,* 36 Ind. 536; *People v. Lee Ah Yute,* 60
Cal. 95; *State v. Noyes,* 36 Conn. 80; *Eingartner v. Ill. S.
Co.* 103 Wis. 307. Alleged admissions having been made
after the plaintiff had title under the statute of limitation,
such admissions are inadmissible because of the statute of
frauds and because the defendant had a vested right in the
property. *Byers v. Shepler* (Pa.) 7 Atl. 182; *Rennert v.
Shirk,* 163 Ind. 542, 72 N. E. 546; *Lee v. Thompson,* 99 Ala.
95, 11 South. 672; *Hudson v. Stillwell,* 80 Ark. 575, 98 S.
W. 356, 367; *Shirey v. Whitlow,* 80 Ark. 444, 97 S. W. 444,
445; *Lemmons v. McKinney,* 162 Mo. 525, 63 S. W. 92, 94;
*Hedges v. Pollard,* 149 Mo. 216, 50 S. W. 889, 892; *Ill.
Cent. R. Co. v. Wakefield,* 173 Ill. 564, 50 N. E. 1002; *Sum-
merfield v. White,* 54 W. Va. 311, 46 S. E. 154, 159; *Todd
v. Weed,* 84 Minn. 4, 86 N. W. 756. The premises in ques-
tion being in the bed of the river at the time the patent was
issued, plaintiff obtained no title. *Ill. S. Co. v. Budzisz,* 115
Wis. 68. The deposition of Mr. Jones being part of the bill
of exceptions in the *Bilot Case,* 109 Wis. 418, was admissible
in evidence. *Charlesworth v. Tinker,* 18 Wis. 633, 635; 16
Cyc. 1091; 1 Greenl. Ev. (16th ed.) sec. 163a; *Kreuger v.
Sylvester,* 100 Iowa, 647, 652.

The following opinion was filed February 16, 1909:

MARSHALL, J. These are assigned as errors:

(1) The court refused to grant a nonsuit, though it ap-
peared that *Budzisz* was a mere successor to the title of ap-
pellant's tenant Otto;

(2) Parol testimony was allowed, and held sufficient, to prove the contents of the deed to *Budzisz;*

(3) Improper evidence was permitted which was prejudicial to appellant;

(4) Evidence offered by appellant was improperly excluded;

(5) Improper questions were included in the special verdict;

(6) Erroneous instructions were given to the jury.

Some other errors were assigned, but those stated sufficiently show the claims of appellant as to all matters requiring attention in deciding the appeal.

The entire field covered by the specified claims of appellant has been examined in detail without discovering any but one question which will reasonably bear discussion to any great length.

There have been very many of these cases. In the whole, almost every conceivable question relating to adverse possession and title based thereon has been discussed, elucidated, and decided. It is useless to go over any of them again, any more than incidentally, if at all. When the effect of statutes relating to the title to realty has been definitely judicially declared, the less said on the subject thereafter, by way of rediscussing the matter, the better. Frequent rediscussion of settled principles with new formulations of the legal rules involved, is liable to create confusion where none need, and it is of the utmost importance that none should, exist. From new discussions of principles, laid aside as settled, variations are liable to be discovered, leading to new or promoting old litigation, when no variation was intended.

The foregoing preface, perhaps, will be taken as a sufficient excuse, if any were needed, for not treating the numerous detail errors grouped under the six heads in this opinion, or the groups in detail. Some of the matters discussed are of little moment and some are substantial. None have been over-

looked, but none will be specially discussed except the one involved in the proposition hereafter stated. Such proposition is touched by several of the groups of assigned errors, but only so as to raise the single question.

Unless there is something fatal to the judgment involved in the proposition, the judgment must be affirmed. All questions otherwise, in the opinion of the court, are free from difficulty and must be resolved in respondents' favor.

This is the proposition which overshadows all others. The affirmative of it is strenuously contended for by the learned counsel for the appellant, while respondents' counsel just as strenuously contend for the negative. If the former is right the judgment must be reversed. If the latter is right it must be affirmed.

If A., having possession of real estate as tenant of B., the owner, conveys the same in writing to C., he having no notice of the relation of landlord and tenant as between A. and B., and C., under his conveyance, takes possession of the property, claiming title by no right except that purported to be conferred by his writing, and he remains in such possession as an exclusive owner might, continuously for the full period of ten years,—does he thereby acquire title in fact, good as against the former owner B., regardless of the relations existing between the latter and A., at the time he obtained his conveyance?

The learned counsel for appellant points to sec. 4216, Stats. (1898), providing that "whenever the relation of landlord and tenant shall have existed between any persons the possession of the tenant shall be deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy," etc., as if the relation of landlord and tenant, having been created, will continue as to the tenant and his successors in possession till possession shall have been delivered to the one from whom it was first obtained, actually or constructively. On that *Pulford v. Whicher,* 76 Wis. 555,

45 N. W. 418; *Church v. Schoonmaker,* 115 N. Y. 570, 22 N. E. 575; *Whiting v. Edmunds,* 94 N. Y. 309; *Bedlow v. New York F. D. D. Co.* 112 N. Y. 263, 287, 19 N. E. 800, and similar cases.

The case cited from our own decisions does not seem to have the remotest bearing on the proposition to be decided. Possession was obtained of the lessee by fraud, for the very purpose of commencing adverse possession, not under conveyance by the tenant in writing, or really any conveyance by him at all, but under a tax deed and through a fraudulent surrender of the landlord's possession, in which the one going out and the one going in participated. Under those circumstances the court, upon equitable considerations, decided that possession of the landlord did not change, but ran against the tax deed, instead of in favor thereof, under the statute of limitations respecting such deeds.

*Whiting v. Edmunds, supra,* is no more in point as we view it. The adverse claimant, as in *Pulford v. Whicher, supra,* did not enter, or claim possession, under a deed from the tenant. He obtained a spurious deed from a stranger, then obtained possession by obtaining an assignment of the leasehold interest, and entered ostensibly by virtue of such assignment. That is, he took possession in fact, as successor of the tenant, and then sought to raise the flag of an adverse possessor, under his spurious deed. How far that is from our proposition we need not delay to point out. It is too manifest. The learned court in the discussion, partly *obiter,* indulged in some remarks, particularly by reference to the ancient case of *Jackson v. Scissam,* 3 Johns. 499, which, if authority at all, would support the appellant's contention; but it is not. Statutes of limitation with the effect given thereto as in this state were not referred to or involved. The court formulated the extreme rule adverted to, which, as seen, had nothing to do with the case, and referred to the ancient case of *Jackson v. Scissam, supra,* which merely declared and applied a common-law rule.

The other cases cited furnish no more satisfactory light. They are all based on the common-law principle that a tenant cannot impeach the title of his landlord, and that he who takes under a tenant merely succeeds to the tenancy relation. That is familiar as a general common-law principle and is applicable so far as not abrogated by statute. It was enforced, at common law, as regards title by adverse possession. It has been incorporated into the statutes at sec. 4216, but not so as to go beyond the letter of the written law and defeat other plain statutes. No one will claim that, in its letter, the statute goes further than to affect tenants at first hands, so to speak, and those taking under them as tenants. The words "whenever the relation of landlord and tenant shall have existed between any persons the possession of the tenant shall be deemed the possession of the landlord," etc., if applied to any other than a tenant in fact, extended by mere construction to include a possessor under the tenant not as such, but as owner, the grantee having no knowledge of the tenancy, ingrafting the common-law rule upon the statute, when by proper rules for construction it was abrogated by not being incorporated in the statute, and the same method of dealing with statutes be persisted in as to our other plain written laws affecting realty,—the result would be to defeat the very purpose of the statute makers, as will be seen.

Sec. 4211 declares, as plainly as by words it could well be done, that if one takes possession of realty, claiming the same under a written instrument, as being a conveyance thereof to him, and exclusive of any other right, he becomes an adverse possessor. It admits of no exception in its letter. This court has said, it admits of no exception by construction; that it was phrased as we find it, in order that it might be understood easily, of all men, as eliminating the ancient doctrine that the person taking possession must do so in good faith.

We said that the question of good faith is not involved under our system, as it was at common law, simply because it is not found in the words of the statute. *Lampman v. Van Al-*

*styne,* 94 Wis. 417, 427, 69 N. W. 171. An examination of that case shows that in the early decisions of this court it was not appreciated that the plain wording of the statute, leaving out some of the common-law characteristics of adverse possession, was for the very purpose of abrogating them.

Speaking of the question raised in that case on the subject the court said:

"There is no middle ground that can be resorted to on this subject. Good faith is an essential element of adverse possession under the statutes of limitation, or it is not. The controversy should be tested and determined by the language of the statutes. We do not find it there in any literal expression,—anything to warrant a departure from the plain import of the words used. . . . The statutes of limitation are statutes of repose, and their purpose should not be impaired by injecting into them by judicial construction elements that are not there."

In that plain language, it would seem, the court declared that our statutes of limitation, appertaining to real estate, are to be administered according to their letter, all common-law features of adverse possession not found therein expressed in such letter, to be regarded as abrogated. That doctrine is now more than twelve years old. It has been iterated and reiterated so many times and so many cases have been ruled by it, that it has become a rule of property, upon which all should feel that they may safely depend.

What feature was there that inhered in the doctrine of adverse possession, at the common law, more significant than the one that the entry was required to be characterized by good faith? It was much more significant, we should say, than the one upon which counsel for appellant rely. How can we say one is not retained, because not found in the letter, and say, in the same breath, that the other, not so found, is retained? How can we solemnly declare, and adhere to the declaration for a long series of years, that all common-law features of adverse possession not found plainly expressed in

the statutes, are to be regarded as having been considerately excluded, because not included, and in the next breath say that some one of them was included, and endeavor to make it logical by referring to decisions elsewhere? Counsel for appellant has failed to satisfy us.

The rule adopted here, as stated, has been affirmed in cases too numerous to mention. They have been so significant as to be very familiar. The following are but a very small fraction of them: *McCann v. Welch,* 106 Wis. 142, 81 N. W. 996; *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 507–520, 81 N. W. 1027, 82 N. W. 534; *Frye v. Highland,* 109 Wis. 292, 85 N. W. 351; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 428–446, 84 N. W. 855, 85 N. W. 402; *Pitman v. Hill,* 117 Wis. 318, 322, 94 N. W. 40; *Ill. S. Co. v. Budzisz,* 119 Wis. 580, 97 N. W. 166; *Clithero v. Fenner,* 122 Wis. 356, 361, 99 N. W. 1027; *Reitler v. Lindstrom,* 126 Wis. 562, 565, 106 N. W. 388; *State v. Lloyd,* 133 Wis. 468, 473, 113 N. W. 964; *Batz v. Woerpel,* 113 Wis. 442, 89 N. W. 516.

Counsel point to decisions elsewhere, using language to the effect that one claiming under another who is but a mere tenant, takes no greater right than the permissive privilege of his grantor, no matter whether he takes knowing the facts or not knowing of them,—not appreciating that such doctrine is based on the supposition that good faith is essential to adverse holding and that bad faith of the grantor necessarily attaches and characterizes the possession of the grantee however remote,—which element of good faith is not required by our statute either in its letter or its spirit.

Many courts have fallen into confusion, as shown in *Lampman v. Van Alstyne,* 94 Wis. 417, 69 N. W. 171, by tying to decisions based on common-law principles, even where elements, other than those called for by the statutory system, were intended to be excluded, and other decisions in states where such elements, particularly that of good faith, are by plain language retained. When we appreciate the clear pur-

pose of our early workers in the field of constructive legislation, and give effect to it, not bending words out of their plain signification to avoid supposed hardship, possible under the new system, the proper course to pursue seems plain.

We start with sec. 4211, laying down that taking possession under a purported conveyance in writing; anything of the dignity of color of title, claiming as an owner might claim, initiates adverse possession; the raising of the flag of the invader, if the instrument is anything constituting, by common understanding, as laid down in the books, color of title; anything that is a real semblance of paper conveyance, however defective the title in fact, may be. *McCann v. Welch, supra; Field v. Columbet,* 9 Fed. Cas. 12; *Bartlett v. Ambrose,* 78 Fed. 839, 843; *In re Ah Lee,* 5 Fed. 899, 913; *Latta v. Clifford,* 47 Fed. 614; *Aldrich v. Griffith,* 66 Vt. 390, 29 Atl. 376.

It was said in *McCann v. Welch, supra,* by Justice DODGE, speaking for the court:

"Wherever the Wisconsin doctrine is maintained, no paper writing, purporting upon its face to be executed and to convey the land, has been held insufficient to support a claim of title such as may ripen into complete ownership by possession for the statutory period. A deed void upon its face will suffice (*McMillan v. Wehle,* 55 Wis. 685, 13 N. W. 694; *Whittlesey v. Hoppenyan,* 72 Wis. 140, 39 N. W. 355); a deed executed by a married woman who has no power to convey (*Sanborn v. French,* 22 N. H. 246; *Perry v. Perry,* 99 N. C. 270, 6 S. E. 86); a deed ostensibly by an agent, possessing no authority (*Millen v. Stines,* 81 Ga. 655, 8 S. E. 315); or signed by one *non compos mentis* (*Ellington v. Ellington,* 103 N. C. 54, 9 S. E. 208); or by one having neither title nor possession (*Webber v. Clarke,* 74 Cal. 11, 15 Pac. 431; *Love's Lessee v. Shields,* 3 Yerg. 405); a deed secured by fraud of the grantee (*Oliver v. Pullman,* 24 Fed. 127). . . . The underlying idea of this statute is not reward to the diligent trespasser, but rather of penalty upon the negligent and dormant owner, who allows another for many years to ex-

ercise acts of possession over his property.   The time neces-
sary to render such occupancy effective under a deed is short-
ened, not in recognition of a good-faith claim by the occu-
pant, but in recognition of the notice to the owner of the ad-
versary character of that occupancy. . . . The purpose of
the statute is not to benefit him who fraudulently obtains such
a conveyance, but to deny the use of the courts to him who
negligently sleeps on his rights.   The requirement of good
faith in few cases supporting it is in disregard or forgetful-
ness of the real purpose of statutes of adverse possession."
106 Wis. at pp. 147, 148 (81 N. W. 997, 998).

This entirely eliminates from our consideration the idea
that adverse possession cannot be initiated without some claim
of actual title grounded on facts which, whether known or
not, would give rise reasonably thereto.

Having fixed the point of commencement, as aforesaid, in
the light of the written law; that it is determinable solely
thereby, and that the character of the instrument is the de-
ciding factor (*Watts v. Owens,* 62 Wis. 512, 22 N. W. 720),
we pass to the next point, fully and plainly covered as before
by sec. 4215.

An adverse possession, commencing as indicated, and con-
tinuing without interruption for the full period of ten years,
bars "an action for the recovery of such real estate so held
adversely or of the possession thereof."   Or, in other words,
creates title in fact.

That is rounded out by the plain statute, sec. 4210, chang-
ing, radically, the common-law rule that, possession by one,
not having title in fact, is presumed, unless shown, clearly
and satisfactorily, to the contrary by evidence of the nature
of the entry as well as of the continuation of the possession,
to be in subordination to the legal title,—so that, in case of
possession being in one, as it might be in the true owner, for
the full statutory period, the presumption arises, that it com-
menced with all the statutory essentials of adverse entry and
likewise continued, efficiently extinguishing the original title;

such presumption being, of course, one of fact and, as such, rebuttable, yet, of as much dignity in favor of the new apparent owner as the presumption displaced during its life was in favor of the former owner's title, in that it requires evidence to extinguish it of the same probative force as would be required to overturn the former.

That makes a complete code of written law, easily understood, and abrogates all rules inconsistent with it, and plainly the rule, so far as it ever existed in fact, that a conveyance by one having a permissive right, such as a tenant, does not furnish a legitimate basis for the incidents of adverse possession.

The significance of this statutory displacement of the common-law presumption, if not fully appreciated in the early days of our system of adverse possession, wholly governed by written law, has been fully vindicated in recent years, as will be seen by the decisions we have referred to, particularly *McCann v. Welch,* 106 Wis. 142, 81 N. W. 996; *Pitman v. Hill,* 117 Wis. 318, 323, 94 N. W. 40; *Wilkins v. Nicolai,* 99 Wis. 178, 74 N. W. 103; *Wollman v. Ruehle,* 100 Wis. 31, 35, 75 N. W. 425; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 440, 84 N. W. 855, 85 N. W. 402.

So we find that the doctrine of title by right of conquest alone, provided for by statute at all points, harsh though it may seem, in an instance now and then, is, in general, grounded on sound public policy and is well established as a rule of property by our written and our unwritten law.

If one raises the flag of the invader, grounded on mere color of title, regardless of right or claim of right in fact, and keeps that flag flying without interruption, in view and defiance of all men, for the full period required, he thereby acquires all the right of a conqueror, who often obtains his right, so called, by force.

It is needless to refer at length to decisions elsewhere whether in or out of harmony with the foregoing, though the

incidental reference here made to the cause of want of harmony, so far as the same exists, might be easily demonstrated to a mathematical certainty. In jurisdictions where contrary holdings are claimed to exist, it may readily be seen how difficult courts have found it to maintain their position.

In *Bradt v. Church,* 110 N. Y. 537, 18 N. E. 357, the New York court charged the alleged adverse possessor with the characteristics of his grantor's right, in that it was that of a tenant, because he entered under a quitclaim deed from such tenant, though it was confessed he was ignorant, in fact, of such grantor's relation to the real owner. The turning point seems to have been the character of the conveyance as indicated. To that there is an able dissenting opinion by Mr. Justice EARL, in the course of which it is said:

"Can it be the law that when a lease has once been executed all persons thereafter found in the adverse possession of the land must be presumed to be in under the lease? There is absolutely no case holding or hinting at such a doctrine. It is not found in the cases of *Jackson v. Davis,* 5 Cow. 123, and *Jackson v. Harsen,* 7 Cow. 323. In each of those cases the party in possession claimed under or from the lessee."

There was no question in that case but that the persons claiming by the right of adverse possession based such right on a deed from a tenant of the true owner. That was supposed by the court to make him, necessarily, a claimant under the lessor, notwithstanding it appeared that he took, not as such, but as grantee, on the face of things, of the title. Justice EARL argued that actual taking as tenant was essential to connect the alleged adverse possessor with the tenant. Referring to the cited cases he said:

"In each of those cases the party in possession claimed under or from the lessee, and it was held that he took the position of the lessee, and could not, therefore, dispute the title of the landlord or set up adverse possession against him. But they are far from holding that the relation of landlord and tenant may be presumed without any proof, and thus what would otherwise be an adverse possession be defeated."

In *Townsend v. Boyd,* 217 Pa. St. 386, 66 Atl. 1099, to which we are referred, the doctrine here contended for by appellant was most distinctly repudiated.    The court said:

"Where one enters without knowledge of the tenancy, and irrespective of it, in the assertion of a title on its face adverse to the lessor, though derived, as here, from the tenant, his possession will be hostile, if unequivocal acts and declarations manifest an intention to hold in despite of all others. . . . Of the facts that have been recognized as indicative of hostile intent, none are perhaps more decisive than the exhibition of a paper title, independent of that residing in the original owner, by color of which the party justifies his entry."

That language was based on the situation that the adverse possessor took possession under a deed and circumstances showing assertion of title of record.

That is to say the doctrine upon which counsel relies does not apply without specific proof that the hostile claimant took possession by virtue of the tenancy instead of in ignorance and repudiation of it.

It seems useless to pursue the matter further.

The opinion of the court is that the case is ruled by the letter of the statute in favor of the affirmative of the proposition presented, which we have fully discussed, and which, as we have seen, is the only one advanced by appellant to defeat the judgment deemed to be sufficient as to doubt and difficulty to warrant special treatment thereof.

*By the Court.*—Judgment affirmed.


The following opinion was filed February 23, 1909:


BARNES, J. (*dissenting*).    The importance and the far-reaching effect of the rule of law declared in the opinion of the majority of the court impels me to express my views more at length than would ordinarily be excusable in a dissenting opinion.    I think that opinion places a premium on piracy, not warranted by the statute, not sanctioned by the former

decisions of this court, and certainly not in harmony with the decisions of any other courts in this country, except those of Pennsylvania. The court holds that where a tenant in possession assumes to sell the property of his landlord, and thereupon, quietly and in accordance with his contract of sale, surrenders the possession which he holds by virtue of his tenancy to such purchaser, the latter, entering under his deed of conveyance, becomes an adverse occupant without any knowledge or notice to the landlord of his hostile claim. The decisions under sec. 4211, Stats. (1898), all hold that the entry under color of title and the possession held thereunder must be adverse to the true owner, else the statute will not run. Sec. 4211, construed in connection with the following section, requires the possession to be adverse.

1. The general rule of law that all persons claiming under a tenant and deriving their possession from him, however remotely, are precluded from relying upon their possession for the purpose of barring the title of the landlord, is one upon which there is little variance of authorities. The cases holding that the landlord may not be disseised by a tenant, or by one claiming possession under a tenant, are numerous, and are collected in 1 Am. & Eng. Ency. of Law (2d ed.) 811, and in 1 Cyc. 1062. The immediate question here is whether the general rule is applicable where a third party secures a conveyance, purporting to convey the fee, from the tenant in possession, believing him to be the owner of the land, and in good faith enters into possession by virtue of his deed from the tenant.

In *Emerick v. Tavener,* 9 Grat. 220, 58 Am. Dec. 217, the court held that, though a party purchase and enter upon premises under an absolute conveyance, "he still, in judgment of law, is deemed to have entered as the tenant of the landlord, and to hold the possession subject to all the duties and responsibilities pertaining to that character." The opinion in this case is cited with approval in the case of *Pulford v.*

*Whicher,* 76 Wis. 555, 45 N. W. 418, and is liberally quoted from therein.   Among other parts of such opinion quoted in the *Pulford Case* is the following:

"When once this relation of landlord and tenant is established by the act of the parties, it attaches to all who may succeed to the possession through or under the tenant, whether immediately or remotely; the succeeding tenant being as much bound by the acts and admissions of his predecessor as if they were his own."

It can be fairly said that the doctrine of *Emerick v. Tavener* is approved in the *Pulford Case.*   It can also be said, as is intimated in the opinion of the court in this case, that it was not necessary to a decision of the *Pulford Case* that the court should decide any question not immediately involved, and that the question there was whether, where there was fraudulent collusion between the tenant and the alleged adverse occupant, by reason of which possession was surrendered to the latter, his possession became adverse to the true owner or he became merely the tenant of such owner.   The *Pulford Case* has at least the merit of involving the relation between the landowner and the successor to the possession held by the tenant, and the discussion, while taking a somewhat wider range than was essential, was not necessarily *obiter.*   If that case cannot be considered as authority in the instant case, what should be said of the cases cited in the opinion in support of the proposition that the question here involved has been set at rest by former decisions?   Not a single one of them involved the relation of landlord and tenant directly or remotely.   General expressions are used to show the application of the statute to the facts in the case under consideration.   Now these sweeping expressions are used to fit the facts in any case that may arise.   It is said in the opinion here that if one raises the flag of the invader under color of title, and keeps it flying for the statutory period in defiance of all men, he acquires the right of a conqueror, or, in other words, becomes the owner of the property.

Thus an attempt is made to create law that must be unbendingly applied to all cases arising at all times and under all circumstances where color of title exists, where the flag of invasion is raised, and where the invader remains in possession of his conquest for ten years. The application of this rule, and it is stated just as broadly in a number of the cases, would prevent the court from giving any relief in case of possession being obtained by means of fraud and collusion with the tenant, provided the prescribed requisites existed. Such rule is directly contrary to the holding in the *Pulford Case,* although none of the decisions presume to overrule that case in any way. This illustrates the danger of always placing implicit reliance on rules of law without considering them in connection with the facts in the particular case, and the impropriety of sweeping away well-grounded exceptions by the application of general rules laid down in cases not involving the facts necessary to create the exception. The opinion of the court in this case states that the *Pulford Case* is not in point because there the possession of the adverse claimant was obtained by fraudulent collusion with the tenant. But neither sec. 4211 nor sec. 4212, Stats. (1898), recognizes in express terms any such exception, and the rule that is broadly laid down in this case recognizes none whatever. Sec. 4216, Stats. (1898), provides:

"Whenever the relation of landlord and tenant shall have existed between any persons the possession of the tenant shall be deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy," in the case of a written lease.

The only material difference between our statute and that of New York is that in New York the occupancy must continue twenty years after the termination of the written lease before the possession of the tenant ceases to be that of the landlord, while in our state the prescribed period is ten years. Our statute is in fact borrowed from New York, although the New York law was modified in the manner suggested. The

decisions of the courts of that state in construing the statute
should therefore not only be helpful, but should also be valu-
able as authority, particularly as secs. 4211 and 4212 of our
statutes are taken from the New York Code, with some varia-
tions that are not material to the question under considera-
tion.

In *Bedlow v. New York F. D. D. Co.* 112 N. Y. 263, 287,
19 N. E. 800, 811, the court said:

"Where the relation of landlord and tenant has been once
established, the possession of the latter and that of his gran-
tees and assignees is the possession of the landlord, and not
hostile or adverse; and this is true even where the grantee has
taken a deed of the fee in ignorance of the fact that his
grantor stood in the relation of a tenant, the latter denying
any such relation."

In *Church v. Schoonmaker,* 115 N. Y. 570, 571, 579, 22
N. E. 575, the defendant purchased land in good faith under
warranty deed from a tenant in possession, believing him to
be the owner, and it was held that until the statutory period
of time had expired a purchaser under a warranty deed did
not hold adversely to the landlord, and that his possession
was that of a tenant to all intents and purposes.

In *Whiting v. Edmunds,* 94 N. Y. 309, 314, the court said:

"Where the relation of landlord and tenant has been once
established, the possession of the latter and that of his gran-
tees and assignees is the possession of the landlord, and not
hostile or adverse; and this is true even where the grantee has
taken a deed of the fee in ignorance of the fact that his
grantor stood in the relation of a tenant."

There are numerous other New York cases holding like-
wise, among which might be cited *Jackson v. Davis,* 5 Cow.
123, 130; *Jackson v. Harsen,* 7 Cow. 323, 325; *Tompkins v.
Snow,* 63 Barb. 525, 533; *Sands v. Hughes,* 53 N. Y. 287,
297; *Jackson v. Scissam,* 3 Johns. 499; *Bradt v. Church,* 110
N. Y. 537, 18 N. E. 357.

It is said that under sec. 4211 of our statutes as construed

by this court the entry of the adverse claimant need not be in good faith, while the contrary rule is held in New York under a similar statute, and that because of such variance in decisions the New York cases are wanting in weight as precedents. It is true that entry in good faith by one claiming under color of title is necessary to create adverse possession in New York, while this court has adopted the other rule. But this difference in views on that subject does not in any way affect the authority of the New York cases on the point under consideration. The question here is the character of the possession which the purchaser from the tenant receives, not the good or bad faith of the purchaser. The New York courts definitely hold that, no matter how innocent the purchaser may be, he still takes the possession of a tenant. In several of the cases it was admitted that such purchaser entered in good faith, thus satisfying the call of the statute defining adverse possession under color of title as construed in New York in this particular.

In *Phillips v. Rothwell*, 4 Bibb, 33, it was held that one who enters upon land as a tenant cannot controvert the title of his landlord, and if a tenant make a deed of bargain and sale to another in fee, the alienee would be in no better condition than the tenant and could not controvert the title by which the tenant entered.

In *Cooper v. Smith*, 8 Watts, 536, 539, 540, the court said:

"It is obvious that the title of a landlord to real estate, though perfectly good and indefeasible, would frequently be rendered the next thing to worthless, if his tenants, or third persons prevailing upon tenants to let them into possession, were permitted to call his title in question, and to make him show that it was better than any other to the land before they should be compelled to surrender the possession of it to him."

In *Harker v. Gustin*, 12 N. J. Law, 42, 48, it is held that where a third party enters into the possession of land with the consent of the tenant in possession, no matter how obtained, such person takes only the possession of the tenant

and holds in subordination to the landlord and not adversely to him. It is said the rule is otherwise where possession is taken without the permission or consent of the tenant.

In *Society, etc. v. Sharon,* 28 Vt. 603, 613, the court said:

"A tenant may repudiate his tenancy, and claim adverse in his own right against his landlord, and the statute will commence running against the landlord from the time he has notice of such repudiation of the tenancy."

The giving of a deed of the premises by the tenant in possession to a third party is held to be an unequivocal repudiation of the tenancy, but that the statute would not begin to run until the landlord had notice of the giving of such deed.

In *Swann v. Thayer,* 36 W. Va. 46, 14 S. E. 423, the court held that any instrument, however defective or imperfect, purporting to convey title of lands, which defines the extent of the claim under it, is color of title; that where a tenant accepts a deed from another, purporting to convey to him the land in fee, and later conveys it in fee to another, and both he and his alienee claim the land in their own right under such conveyance, *and the landlord has knowledge* of such conveyance and claim, possession by such tenant and his alienee *after such knowledge on the part of the landlord* for the period fixed by the statute of limitations will be adversary, and will bar the landlord's right. To the same effect is *Swann v. Young,* 36 W. Va. 57, 14 S. E. 426.

In *Campbell v. Shipley,* 41 Md. 81, 96, it is said:

"Not only is the tenant precluded from relying on his possession to bar his landlord, but also all persons who come in under, or derive possession from, the tenant in any manner, however remotely."

And in *Ehrman v. Mayer,* 57 Md. 612, 624, the following is added to the foregoing quotation:

"In such cases possession is presumed to be in accordance with the title, and this presumption will hold until some notorious and unequivocal act of exclusion shall have occurred."

Maryland, Vermont, and West Virginia all have statutes prescribing that title to real estate may be acquired by adverse occupancy. In so far as the question under consideration is involved, these statutes are not different in principle from our own. Other cases holding that third parties entering into the possession of leased premises with the consent of the lessee, however obtained, hold possession as tenants not adversely to the landlord, are *Graham v. Moore,* 4 Serg. & R. 467; *Turley v. Rodgers,* 1 A. K. Marsh. 245; *Russell v. Irwin's Adm'r,* 38 Ala. 44, 45, 50; *Saunders v. Annesly,* 2 Sch. & Lef. 73.

I have been unable to find any well-considered case, except *Dikeman v. Parrish,* 6 Pa. St. 210, approved in *Townsend v. Boyd,* 217 Pa. St. 386, 395, 66 Atl. 1099, which holds that the purchaser from a tenant in possession who succeeds to the possession of such tenant holds adversely to the landlord. The possession that is surrendered to him is the possession of the tenant. From the nature of the relation existing between the landlord and the tenant, that possession cannot be adverse during the continuance of the lease or for ten years thereafter; at least not without some repudiation of the relation of landlord and tenant by the party in possession, of which the landlord has notice. The question is exceedingly important and may often involve valuable property rights. If a tenant who is let into possession of property by the owner for a nominal consideration may the day following convey such property to a party who knows, or ought to know, that he has no title, and such grantee by entering into possession can at the end of ten years assert absolute title to the property, much fraud and injustice may be practiced. The question here presented simply is: Did the defendant enter into possession of the premises in dispute under color of title, or did he secure the possession of the lessee only? If the former is true, his possession is adverse. If the latter is true, his possession is simply the possession of the landlord. I think

under the authorities cited the defendant's possession in this case was not adverse, but was just as much the possession of the landlord as would have been Otto's possession had he remained in the occupancy of the premises. This construction of the law does no violence to the language of the statutes quoted. The situation of the defendant and his grantor in this case was such that no adverse possession could be given to the former by the tenant that was or could be adverse to the landlord until it was notified of the hostile claim, and until such notice was given the relation of landlord and tenant existed between the parties to this suit.

It was argued in the instant case that it does not fall within the general rule, however, because in this instance Otto was in possession of the premises at the time he leased the same from the North Chicago Rolling Mill Company. The California authorities certainly sustain this contention, and hold that under such circumstances a tenant in possession can show a paramount outstanding title either in himself or in a third party and thus defeat the action of ejectment. *Tewksbury v. Magraff*, 33 Cal. 237, 245; *Franklin v. Merida*, 35 Cal. 558, 571, 575; *Johnson v. Chely*, 43 Cal. 299, 305; *Peralta v. Ginochio*, 47 Cal. 459, 460. There are also numerous cases holding that, where a lease is obtained from a party in possession by fraud or misrepresentation, the party signing the same is not estopped from denying the landlord's title. That question, however, is not involved in this case. The rule of the California court is at variance with the decisions of most of the courts of this country, as will be seen from an examination of the following authorities: 18 Am. & Eng. Ency. of Law (2d ed.) 415; 24 Cyc. 938; *Killoren v. Murtaugh*, 64 N. H. 51, 5 Atl. 769; *School Dist. v. Long* (Pa.) 10 Atl. 769; *People's L. & B. Asso. v. Whitmore*, 75 Me. 117; *Wallace v. Ocean Grove C. M. Asso.* 148 Fed. 672, 78 C. C. A. 406; Jones, Landl. & T. § 697; *Jones v. Reilly*, 174 N. Y. 97, 66 N. E. 649; *Dixon v. Stewart*, 113 N. C. 410, 414, 18 S. E. 325; *Willis v. Harrell*, 118 Ga. 906, 45 S. E. 794;

*Jordan v. Katz,* 89 Va. 628, 16 S. E. 866; *Patterson v. Hansel,* 4 Bush, 654, 659; *Parrott v. Hungelburger,* 9 Mont. 526, 533, 24 Pac. 14; 1 Washb. Real Prop. (5th ed.) 599; *Campau v. Lafferty,* 43 Mich. 429, 5 N. W. 648; *Sage v. Halverson,* 72 Minn. 294, 295, 75 N. W. 229; *Ricketson v. Galligan,* 89 Wis. 394, 62 N. W. 87; *Lucas v. Brooks,* 18 Wall. 436; *Hughes v. Watt,* 28 Ark. 153; *Miller v. Bonsadon,* 9 Ala. 317; *Carter v. Marshall,* 72 Ill. 609; *Forgy v. Harvey,* 151 Ind. 507, 51 N. E. 1066; *Bowdish v. Dubuque,* 38 Iowa, 341; *Hawes v. Shaw,* 100 Mass. 187; *Williams v. Wait,* 2 S. Dak. 210, 49 N. W. 209; *Tyler v. Davis,* 61 Tex. 674.   It follows that the defendant's grantor, Otto, recognized the title and possession of the lessor, and thereby estopped himself to dispute either, and that when once the relation of landlord and tenant was established between the plaintiff's grantor and said Otto, all persons succeeding to the possession through or under the lessee hold such possession as tenants of the lessor and not adversely to him.

2. The Otto lease was made July 1, 1887, for the period of five years.   Either party might terminate it by giving the other six months' notice of intention so to do.   It contained no prohibition against Otto's selling the interest he acquired thereunder, and provided that the annual rental of the parcel of land described therein should be $3 per annum, payable in advance.   After the making of this lease the plaintiff had no immediate right of action against any one to recover the possession of the demised premises.   The lease might be terminated, but only on six months' notice, and of course the lessor was under no obligation to give such notice.   In the event of a default in payment of rent the landlord might oust the occupant, but this he was not obliged to do, and could not do without first giving notice to quit.   As was said in *Mash v. Bloom,* 133 Wis. 646, 649, 114 N. W. 457, 459:

"There could have been no wrongful withholding of the premises until the plaintiff elected to take advantage of condition broken and so notified the defendant, either by demand

of possession or some other act equivalent to a re-entry for condition broken. Until this was done no right of action to recover possession of the premises existed."

The plaintiff in an action of ejectment must be entitled to the possession of the premises at the time the action is commenced. *M. E. Church v. N. P. R. Co.* 78 Wis. 131, 47 N. W. 190. The plaintiff was not entitled to the possession of the premises during the life of the lease, unless some condition thereof was broken and the lessor elected to take advantage of it, or unless the notice of termination provided for in the lease was given. The conveyance testified to as having been made from Otto to defendant, if it conveyed anything, carried Otto's possession, right of possession, and leasehold interest to the defendant, and would defeat any action brought by plaintiff to recover the property during the life of the lease, or until there had been a default in complying with its conditions and the same had been taken advantage of in the usual way. The landlord, not being entitled to the premises, could not bring ejectment until after the end of the term. *Johnson v. Gurley,* 52 Tex. 222; *Dennison v. Read,* 3 Dana, 586; *Fox v. Brissac,* 15 Cal. 223; *Van Rensselaer v. Jewett,* 2 N. Y. 141; Sedg. & W. Trial of Title, § 350, and cases cited.

3. The deed from Otto to *Budzisz* was not produced. The evidence tending to show its contents was so unsatisfactory that I feel disposed to say that it did not carry color of title. It was written by Mrs. Otto. Its contents were translated by her into German for one Kolp, who is the only witness sworn on the trial who assumes to remember what the document contained. According to his evidence the deed contained substantially the following:

"This property to *August Budzisz,* the ground, house, and all, and both signatures was below, he and she, Mrs. Otto. . . . Everything that is Frank Otto's to *August Budzisz.* . . . This house and the lot, the fence, and everything what was in the fence."

A deed may be sufficient to set the ten-year statute of limitations running where it is executed by one having neither title nor possession (*Webber v. Clarke,* 74 Cal. 11, 15 Pac. 431), or where it is void on its face (*Whittlesey v. Hoppenyan,* 72 Wis. 140, 39 N. W. 355), or by one who is *non compos mentis* (*Ellington v. Ellington,* 103 N. C. 54, 9 S. E. 208), or where it is secured by fraud of the grantee (*Oliver v. Pullam,* 24 Fed. 127), or where it is given by a married woman having no authority to convey (*Sanborn v. French,* 22 N. H. 246), or when given by an agent who has no authority to convey (*Millen v. Stines,* 81 Ga. 655, 8 S. E. 315). All these cases, as well as some others, are apparently cited with approval in *McCann v. Welch,* 106 Wis. 142, 147, 81 N. W. 996. But it is at least essential that a deed under which a party in possession of land claims color of title should describe the premises. *Graeven v. Dieves,* 68 Wis. 317, 31 N. W. 914; *Childs v. Nelson,* 69 Wis. 125, 33 N. W. 587; *McCann v. Welch, supra.* Where one "enters into and holds continual possession, under a paper title, of part of the premises included in it, he shall be deemed to hold adversely all of the premises included in it," except when the tract is divided into lots. *Pepper v. O'Dowd,* 39 Wis. 538, 543. It is therefore "essential to color of title that the premises shall be described with the same degree of certainty as is required in deeds relied upon as absolute conveyances." *Allmendinger v. McHie,* 189 Ill. 308, 311, 59 N. E. 517; *Shackleford v. Bailey,* 35 Ill. 387. "The calls of a deed, when title by adverse possession is claimed, limit the right as a matter of law," as to "the extent to which title can be claimed by adverse possession under the instrument itself." *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 515, 81 N. W. 1027, 1033, 82 N. W. 534. If the plaintiff is to lose its title because of the execution and delivery of an instrument to the defendant conveying color of title, it would seem that it should be at least incumbent on the defendant to show that

the premises in controversy were in fact conveyed by such instrument.

"Statutes of this nature, which operate in restraint of the true title, or to make a certain kind of possession effectual for that purpose, if they are not to be construed strictly, yet ought not to be construed so liberally as to include within them any case not fairly within the words." Sydnor v. Palmer, 29 Wis. 226, 253.

This court, perhaps, has gone as far as any other in admitting parol testimony to clear up ambiguities in written instruments intended to convey an interest in lands. The law will not declare an agreement void, however uncertain, when light which contemporaneous facts and circumstances furnish renders the description definite and certain. A description which can be made certain by proof of an existing fact referred to in the agreement is regarded as sufficiently certain to enforce specific performance, and a deed of a description otherwise uncertain should be construed with reference to the actual rightful state of the property at the time of the execution of such deed. Messer v. Oestreich, 52 Wis. 684, 689, 10 N. W. 6; Whitney v. Robinson, 53 Wis. 309, 314, 10 N. W. 512; Docter v. Hellberg, 65 Wis. 415, 27 N. W. 176; Simmons v. Johnson, 14 Wis. 523, 526; Mills v. C. & N. W. R. Co. 103 Wis. 192, 79 N. W. 245; Hanley v. Kraftczyk, 119 Wis. 352, 96 N. W. 820. And it has been held that a description in a complaint in ejectment is sufficient, if, by the aid of a surveyor and a person knowing the monuments and boundaries therein mentioned, the land can be found. Off v. Heinrichs, 124 Wis. 440, 102 N. W. 904.

These authorities deal with the construction which should be placed on such instrument in controversies arising between the parties thereto or those in privity with them, and hardly reach the question here involved. A party in adverse possession for twenty years without color of title acquires title to land. By means of an instrument conveying the land, coupled with adverse possession, the necessary period of ad-

verse possession is reduced to ten years. It is the instrument under which colorable title is claimed which curtails the necessary length of the adverse holding. This court has not as yet decided that such time may be curtailed by an instrument which at best does not contain any description of the property unless it is aided in material particulars by extraneous facts resting solely within the knowledge of the parties to the transaction. If we concede that, if this were an action between the grantor and grantee in this instance, parol evidence would be admissible to remove the existing ambiguities which the testimony discloses, it by no means follows that such testimony should be received as against a third person who was an entire stranger to the deed, where such deed is relied upon as being an instrument conveying the land so as to set the ten-year statute of limitations running. According to the only parol testimony tending to establish the contents of this deed, the document must have read something like this: Frank Otto is selling his property, house, lot, ground, fence, and everything that is in the fence, that is Frank Otto's, to Budzisz—the document being signed by Frank Otto and Mary Otto. It goes without saying that this deed, standing alone, does not describe any real estate. It could only become effective as a conveyance when the description of the property is supplied by parol testimony. This description is the essential thing which I think should not rest in parol, but must be shown in the deed itself in order that the grantee may get the benefit of the ten-year statute.

4. I also think the court committed prejudicial and reversible error in not permitting plaintiff to cross-examine the defendant in reference to statements made by him which tended to show that he was not in fact in possession of the premises under his alleged color of title for the statutory period.

TIMLIN, J. I concur in the foregoing dissenting opinion of Mr. Justice BARNES.

A motion by the appellant for a rehearing was duly filed and submitted.

For the appellant there was a brief by *Van Dyke & Van Dyke, Walter D. Corrigan, John H. Paul,* and *Theodore Kronshage,* attorneys, and *Kronshage, McGovern, Goff, Fritz & Hannan,* of counsel. They contended, *inter alia,* that the doctrine that the possession of the tenant is and continues the possession of the landlord has existed for centuries. Litt. § 58; Coke, Litt. 47*b;* Bac. Abr. LEASES, 632; 6 Am. Law Rev. 1; 2 Plowd. *434; *Rawlyn's Case,* 4 Rep. 52*a,* 53*a;* *Sutton's Case,* Cro. Eliz. 140; *Driver ex dem. Oxenden v. Lawrence,* 2 W. Blackst. 1259; Cole, Ejectment, 213; *Doe ex dem. Bristow v. Pegge,* 1 T. R. 758; *Hall v. Butler,* 10 Ad. & El. 204; *Cooke v. Loxley,* 5 T. R. 4; *Cuthbertson v. Irving,* 4 H. & N. 742, aff'd 6 H. & N. 135; *Beckett v. Bradley,* 7 M. & G. 994; *Langford v. Selmes,* 3 K. & J. 220; *Delaney v. Fox,* 1 C. B. N. s. 166; *Jolly v. Arbuthnot,* 4 DeG. & J. 224; *Morton v. Woods,* 17 W. R. 414; *Cobb v. Arnold,* 8 Met. 398; *Barwick ex dem. Richmond v. Thompson,* 7 T. R. 488; *Blight's Lessee v. Rochester,* 7 Wheat. 535, 547. The estoppel rests upon considerations of public policy. Sedgwick & W. Trial of Title to Land, § 352; Kerr, Real Prop. sec. 1337; *Anderson v. Darby,* 1 Nott & McC. 369; 1 Greenl. Ev. § 25; *Cobb v. Arnold,* 8 Met. 398; Gear, Landl. & T. § 165, p. 580; *Crim v. Nelms,* 78 Ala. 604; *Caldwell v. Smith,* 77 Ala. 157; *Washington v. Conrad,* 2 Humph. 562, 565; *Griffin v. Ransdell,* 71 Ind. 440. No act of the tenant can prejudice title or possession of the owner. Chambers, Landl. & T. 38; 3 Washb. Real Prop. (5th ed.) 98; *Cameron v. C., M. & St. P. R. Co.* 60 Minn. 100, 103; *Saunders v. Annesley,* 2 Sch. & Lef. 73; *Prentise v. Hodgkin,* 2 Bulst. 138; *Luce v. Carley,* 24 Wend. 451. The estoppel continues until possession is surrendered to the landlord. Warvelle, Ejectment, § 459, p. 514; Cole, Ejectment, 216; *Doe ex dem. Knight v. Lady*

*Smythe,* 4 M. & S. 347; *Quinn v. Quinn,* 27 Wis. 168, 170; *Pulford v. Whicher,* 76 Wis. 555, 559; 2 McAdam, Landl. & T. sec. 421; 1 id. sec. 73, p. 219; *Tilghman v. Little,* 13 Ill. 239, 240; *Sharpe v. Kelley,* 5 Denio, 431; *McConnell v. Bowdry's Heirs,* 4 T. B. Mon. 392; *Jackson ex dem. Colton v. Harper,* 5 Wend. 246; 1 Washb. Real Prop. book 1, 159, sec. 4; *Bryan v. Winburn,* 43 Ark. 28; *Rogers v. Boynton,* 57 Ala. 501; *Wilson v. James,* 79 N. C. 349; *Bradt v. Church,* 39 Hun, 262, 264; *Williams v. Garrison,* 29 Ga. 503; *Dasher v. Ellis,* 102 Ga. 830; *Hodges v. Shields,* 18 B. Mon. 828; *Campbell v. Campbell,* 21 Mich. 438.   The principle of estoppel is of general application whenever possession has been taken under any species of tenancy, whether the action be assumpsit, debt, covenant, or ejectment.   Taylor, Landl. & T. § 705; Sedgwick & W. Trial of Title to Land, § 351; Hilliard, Real Prop. sec. 60, p. 394.   This principle of estoppel applies in every form of action by which the lessor may seek to assert the rights reserved or promised to him in his lease. *Hilbourn v. Fogg,* 99 Mass. 11; *Miller v. Lang,* 99 Mass. 13; *Coburn v. Palmer,* 8 Cush. 124; *Towne v. Butterfield,* 97 Mass. 105; *Binney v. Chapman,* 5 Pick. 124; *Zeller's Lessee v. Eckert,* 4 How. 289, 295; *Vernam v. Smith,* 15 N. Y. 327, 329; *Strain v. Gardner,* 61 Wis. 174, 182.   The following are instances where this doctrine of estoppel has been applied otherwise than in actions for ejectment: *Actions for use and occupation: Murphy v. Teter,* 56 Ind. 545; *Earle's Adm'r v. Hale's Adm'r,* 31 Ark. 470; *Cobb v. Arnold,* 8 Met. 398; *Binney v. Chapman,* 5 Pick. 124; *Codman v. Jenkins,* 14 Mass. 93; *Osgood v. Dewey,* 13 Johns. 240; *Moore v. Beasley,* 3 Ohio, 294; *Fronty v. Wood,* 2 Hill (S. C.) 367; *Dorrill v. Stephens,* 4 McCord, 59; *Cuthbertson v. Irving,* 6 H. & N. 135; *Balls v. Westwood,* 2 Campb. 11; *Rennie v. Robinson,* 7 Moore, 539; *Dolby v. Iles,* 11 Ad. & El. 335. *Actions for rent:* 24 Cyc. 942, note 91; *Lainson v. Tremere,*

1 Ad. & El. 792; *Johnson v. Tucker,* 136 Wis. 505, 117 N. W. 1003; *Lataillade v. Santa Barbara G. Co.* 58 Cal. 4; *Hill v. Williams,* 41 S. C. 134; *Life v. Secrest,* 1 Ind. 512; *Perkins v. Governor,* Minor, 352; *Parker v. Manning,* 7 T. R. 537; *Wittman v. M., L. S. & W. R. Co.* 51 Wis. 89; *Tondro v. Cushman,* 5 Wis. 279. *Unlawful detainer:* 24 Cyc. 942, n. 97–99; *Davis v. Pou,* 108 Ala. 443, 19 South. 263; *Nicrosi v. Phillipi,* 91 Ala. 299, 8 South. 561; *Thorn v. Reed,* 1 Ark. 480; *McLean v. Spratt,* 20 Fla. 515; *Thomas v. Sass,* 3 Ind. Terr. 545, 64 S. W. 531; *Sass v. Thomas,* 3 Ind. Terr. 536, 64 S. W. 528; *Settle v. Henson,* Morr. 111; *Mefford v. Franklin Co.* 22 Ky. Law Rep. 833, 58 S. W. 993; *Wilson v. Lyons,* 4 Neb. (Unofficial) 406, 94 N. W. 636; *Camley v. Stanfield,* 10 Tex. 546, 60 Am. Dec. 219; *Emerick v. Tavener,* 9 Gratt. 220, 58 Am. Dec. 217; *Stover v. Davis,* 57 W. Va. 196, 49 S. E. 1023; *First Eng. E. L. Church v. Arkle,* 49 W. Va. 92, 38 S. E. 486; *Voss v. King,* 33 W. Va. 236, 10 S. E. 402; *S. C.* 38 W. Va. 607, 18 S. E. 762; 32 Cent. Dig. sec. 159. *Summary proceedings:* 23 Cyc. 942; *Dilks v. Kelsey* (N. J. Law) 59 Atl. 897; *People ex rel. Murphy v. Lockwood,* 3 Hun, 304; *People ex rel. Ward v. Kelsey,* 38 Barb. 269; *White v. Bailey,* 14 Conn. 271. *Replevin: Syllivan v. Stradling,* 2 Wils. 208; *Dancer v. Hastings,* 4 Bing. 2; *Hall v. Butler,* 10 Ad. & El. 204. *Suits for equitable relief: Homan v. Moore,* 4 Price, 5; *Pulford v. Whicher,* 76 Wis. 555; *Shepardson v. Elmore,* 19 Wis. 424. *Actions relating to personal property: Hall v. Butler,* 10 Ad. & El. 204; *Neubauer v. Gabriel,* 86 Wis. 200. *Waste: Cole v. Bickelhaupt,* 64 App. Div. 6; *Dills v. Hampton,* 92 N. C. 565; Everest & S. Estoppel, 291. *Cases between bailor and bailee: Biddle v. Bond,* 6 B. & S. 225; *Shelbury v. Scotsford,* Yelv. 23; *Wilson v. Anderton,* 1 B. & Ad. 450; *Rogers v. Lambert,* [1891] 1 Q. B. 318; *Henderson v. Williams,* [1895] 1 Q. B. 521, 534. *Cases between licensor and licensee: Hayne v. Maltby,* 3 T. R. 438; *Hall v. Conder,* 2 C.

B. N. S. 22; *Lawes v. Purser,* 6 E. & B. 930; *Taylor v. Hare,* 1 B. & P. N. R. 260; *Noton v. Brooks,* 7 H. & N. 499; *Crossley v. Dixon,* 10 H. L. Cas. 293; *Clark v. Adie,* L. R. 2 App. Cas. 423, 435; *Cameron v. C., M. & St. P. R. Co.* 60 Minn. 100, 103; *Doe ex dem. Johnson v. Baytup,* 3 Ad. & El. 188; *Ryder v. Mansell,* 16 Am. L. Reg. 590. The estoppel to dispute title and possession runs with the land. Taylor, Landl. & T. § 91; Sims, Covenants, 126; 1 McAdam, Landl. & T. 219; *Webb v. Austin,* 7 M. & G. 701; *Weale v. Lower,* Pol. 54 (Co. Litt. 352a); Bac. Abr. LEASE, O; *Trevivan v. Lawrence,* 6 Mod. 256, 258, 2 Ld. Raym. 1048a, c, 1 Salk. 276; *Goodtitle ex dem. Faulkner v. Morse,* 3 T. R. 365, 371; Redman & Lyon, Landl. & T. 25; *Doe ex dem. Downe v. Thompson,* 9 Q. B. 1043; *Barwick ex dem. Richmond v. Thompson,* 7 T. R. 488; *London & N. W. R. Co. v. West,* L. R. 2 C. P. 553, 36 L. J. C. P. 245. Estoppel extends to all succeeding to possession from, through, or under the tenant. Tyler, Eject. & Adv. Enj. 208; Kerr, Real Prop. sec. 1339; Gear, Landl. & T. sec. 165; Cole, Ejectment, 214; Newell, Ejectment, 595; Warvelle, Ejectment, sec. 462; Everest & S. Estoppel, 269; Buswell, Limitations, § 308; Williams & Yates, Ejectment, 28, 29; *Taylor v. Needham,* 2 Taunt. 278, 282; *Goodtitle ex dem. Faulkner v. Morse,* 3 T. R. 365, 371; *Doe ex dem. Bullen v. Mills,* 2 Ad. & El. 17; *Sexton v. Carley,* 147 Ill. 269; *Hardin v. Forsythe,* 99 Ill. 312, 320; *Worthington v. Lee,* 61 Md. 530, 539; *Cameron v. C., M. & St. P. R. Co.* 60 Minn. 100, 103; *Elms v. Randall,* 4 Dana, 519; *Doe ex dem. Callender v. Sherman,* 5 Ired. 711; *Doe ex dem. Belfour's Heirs v. Davis,* 4 Dev. & B. 300; *Jackson ex dem. Williams v. Miller,* 6 Wend. 228; *Coles v. Marquand,* 2 Hill, 447; *Bertram v. Cook,* 32 Mich. 518; *Doe ex dem. Lockwood v. Walker,* 3 McLean, 431; *Neff v. Ryman,* 100 Va. 521, 522; *Stewart v. Keener,* 131 N. C. 486, 487; *Hackney v. McIninch,* 79 Neb. 128, 112 N. W. 296; *White v. Barlow,* 72 Ga. 887; *Graham v. Moore,* 4 Serg. & R. 467, 472; *Den*

*ex dem. Lunsford v. Alexander,* 4 Dev. & B. 40; *Conwell v. Mann,* 100 N. C. 234; *Thorndike v. Norris,* 24 N. H. 454; *Milhouse v. Patrick,* 6 Rich. Law, 350; *Washington v. Conrad,* 2 Humph. 562; *Allen v. Paul,* 24 Grat. 332; *Allen v. Bartlett,* 20 W. Va. 46; *Genin v. Ingersoll,* 2 W. Va. 558; *Stagg v. Eureka T. & C. Co.* 56 Mo. 317; *Derrick v. Luddy,* 64 Vt. 462; *Jamaica v. Hart,* 52 Vt. 549; *Territt v. Cowenhoven,* 79 N. Y. 400; *Richardson v. Harvey,* 37 Ga. 224; *Doe ex dem. Kluge v. Lachenour,* 34 N. C. 180; *Thomson v. Peake,* 7 Rich. Law, 353; *Sexton v. Chicago S. Co.* 129 Ill. 318. The estoppel applies even if grantee of fee is ignorant of the tenancy. Jones, Landl. & T. § 699; *McLennan v. Grant,* 8 Wash. 603; *Reed v. Shepley,* 6 Vt. 602, 603; *Phillips v. Rothwell,* 4 Bibb, 33; *Fusselman v. Worthington,* 14 Ill. 135; *Campbell v. Shipley,* 41 Md. 81, 96; *Rose v. Davis,* 11 Cal. 133, 135; *Lane's Lessee v. Osment,* 9 Yerg. 86; *Newman v. Mackin,* 21 Miss. 383. The successor of the tenant, being in privity with his predecessor, is also estopped. *Taylor v. Needham,* 2 Taunt. 278, 282; *McLennan v. Grant,* 8 Wash. 603; *Sexton v. Chicago S. Co.* 129 Ill. 318; *Hackney v. McIninch,* 79 Neb. 128, 112 N. W. 296; *Buford v. Wasson* (Tex.) 109 S. W. 275; *Carter v. La Grange,* 60 Tex. 636; *Cobb v. Robertson,* 99 Tex. 138, 86 S. W. 746; Cole, Ejectment, 215; 1 Washb. Real Prop. (5th ed.) 430; 2 Kerr, Real Prop. secs. 1339, 1340; 1 Hilliard, Real Prop. (4th ed.) 293, § 60; 2 Greenl. Ev. § 305; Angell, Limitations, sec. 442; Townshend, Recovery of Demised Premises, 34; 1 Wood, Landl. & T. 16, 17; Gear, Landl. & T. §§ 4, 166; *Worthington v. Lee,* 61 Md. 530, 539; *Jackson ex dem. Van Schaick v. Davis,* 5 Cow. 123; 1 McAdam, Landl. & T. 78; *Jackson v. Mowry,* 30 Ga. 143; *Phelps v. Conant,* 30 Vt. 277; *Littleton v. Wynn,* 31 Ga. 583; *Oakes v. Oakes,* 16 Ill. 106; *Chambers v. Ross,* 25 N. J. Law, 293; *Jacques v. Short,* 20 Barb. 269; *Provost v. Calder,* 2 Wend. 517; *Armstrong v. Wheeler,* 9 Cow. 88; *Acker v. Witherell,* 4 Hill (N. Y.) 112;

Illinois Steel Co. v. Budzisz, 139 Wis. 281.

*Benson v. Bolles,* 8 Wend. 175; *Overman v. Sanborn,* 27 Vt. 54; *Howland v. Coffin,* 12 Pick. 125; *Taylor ex dem. Atkyns v. Horde,* 1 Burr. 60, 112; *Howard v. Ellis,* 4 Sandf. 369; *Jackson ex dem. Webber v. Harsen,* 7 Cow. 323, 325; *Towery v. Henderson,* 60 Tex. 291, 296; *Jackson ex dem. Klein v. Graham,* 3 Caines, 188; *Jackson ex dem. Masten v. Bush,* 10 Johns. 223; *Mitchell v. Life,* 8 Yerg. 179; *Willison v. Watkins,* 3 Pet. 43; *Wittman v. M., L. S. & W. R. Co.* 51 Wis. 89; *Boynton v. Jackway,* 10 Paige, 307; *Wood v. Turner,* 8 Humph. 685, 689; *Wood v. Turner,* 7 Humph. 517; *Siglar v. Malone,* 3 Humph. 16; *Thomson v. Peake,* 7 Rich. Law, 353; *Murphy v. Teter,* 56 Ind. 545; *Granger v. Parker,* 137 Mass. 228; *Hentig v. Pipher,* 58 Kan. 788; *Walker v. McCusker,* 71 Cal. 594. The relation of landlord and tenant is not dependent upon the payment of rent. *Failing v. Schenck,* 3 Hill (N. Y.) 344, 346; *Orrell v. Maddox,* Runnington, Ejectment, 458, App. 1; 2 Hilliard, Abr. Real Prop. 191; *Bradt v. Church,* 110 N. Y. 537, 544; *Jackson ex dem. Van Schaick v. Davis,* 5 Cow. 123, 129, 132; *Lyon v. Odell,* 65 N. Y. 28; *Jackson ex dem. Kane v. Slernbergh,* 1 Johns. Cas. 153; *Russell v. Doty,* 4 Cow. 576; *Jackson ex dem. Klein v. Graham,* 3 Caines, 188; *Hasbrouck v. Burhans,* 42 Hun, 376; *Strain v. Gardner,* 61 Wis. 174, 182; *McCormick v. Herndon,* 86 Wis. 449. The New York doctrine is that the grantee in fee under deed from a tenant is estopped to claim adversely, notwithstanding his ignorance of the tenancy. *Jackson ex dem. Vandeuzen v. Scissam,* 3 Johns. 499; *Jackson ex dem. Swartwout v. Cole,* 4 Cow. 587; *Jackson ex dem. Webber v. Harsen,* 7 Cow. 323; *Luce v. Carley,* 24 Wend. 451; *Jacques v. Short,* 20 Barb. 269; McAdam, Landl. & T. 219; Bac. Abr. Leases (ed. 1832) 853; 2 Kerr, Real Prop. sec. 1342; 1 Coke, Litt. (19th ed.) 47b; Taylor, Landl. & T. §§ 89–91; Cooley's Blackst. bk. II, 144, note; Jones, Landl. & T. § 688; 3 Washb. Real Prop. 98; Williams & Yates, Ejectment, 28, 29; Sedgwick & W. Trial of Title

to Land, 254; Cole, Ejectment, 215, 216; 24 Cyc. 937. The statute in New York was and is that, where the relation of landlord and tenant exists, the possession of the tenant is deemed to be the possession of the landlord until twenty years after the expiration of the tenancy.   Sec. 13, tit. II, art. I, R. S. N. Y. 1829; *O'Donnell v. McIntyre*, 118 N. Y. 156; *Sands v. Hughes*, 53 N. Y. 287, 293; *Whiting v. Edmunds*, 94 N. Y. 309; *Bradt v. Church*, 110 N. Y. 537, 543; *Bedlow v. New York F. D. D. Co.* 122 N. Y. 263, 287; *Church v. Schoonmaker*, 115 N. Y. 570, 571; *Tompkins v. Snow*, 63 Barb. 525; *Merritt v. Smith*, 27 Misc. 366, 369. The New York statute was embodied literally into the territorial statutes of 1839, and has continued unchanged to the present time, except that in 1858 the life of the estoppel was cut down from twenty to ten years.    *Pulford v. Whicher*, 76 Wis. 555; *Tondro v. Cushman*, 5 Wis. 279; *Shepardson v. Elmore*, 19 Wis. 424; *Chase v. Dearborn*, 21 Wis. 57; *Quinn v. Quinn*, 27 Wis. 168, 170; *Cross v. Upson*, 17 Wis. 618, 623; *McPherson v. Featherstone*, 37 Wis. 632, 643; Angell, Limitations, 385; 3 Washb. Real Prop. 123–127; *Wittman v. M., L. S. & W. R. Co.* 51 Wis. 89; *De Pere Co. v. Reynen*, 65 Wis. 271, 281; *Neubauer v. Gabriel*, 86 Wis. 200, 204; 26 Am. & Eng. Ency. of Law (2d ed.) 602; *Clark v. Janesville*, 10 Wis. 136; *Wis. Ind. School v. Clark Co.* 103 Wis. 651; *Richardson v. Stuesser*, 125 Wis. 66; *Meek v. Pierce*, 19 Wis. 300; *Orton v. Noonan*, 29 Wis. 541, 545; *Heydon's Case*, 3 Rep. 18; *U. S. v. Fisher*, 2 Cranch, 358; *Wales v. Lyon*, 2 Mich. 276, 285.

*Fiebing & Killilea*, attorneys, and *Moritz Wittig* and *H. J. Killilea*, of counsel, *contra*.

The following opinion was filed May 11, 1909:

MARSHALL, J.   Notwithstanding the very able and exhaustive argument for a rehearing filed by appellant's attorneys, after a careful review thereof it is the opinion of the

court that the principles of law already stated have been, in terms or effect, many times declared and applied here in recent years and that, logically, they rule this case as indicated in the former opinion.

The difficulty with counsel's argument is that it is based on a multitude of authorities, ancient and modern, largely the former, which, with numerous others that might be referred to, constitute about as hopeless a state of confusion, especially when differing statutory regulations are not taken account of, respecting the law of adverse possession as could well be. That was appreciated by our early workers in the field of constructive legislation, and for the purpose of making a plain, workable, just code of written law to be referred to as a certain test of rights and remedies relative to titles to realty, our statutes, as we now find them, were adopted more than half a century ago and have been, as a rule, closely adhered to. Such being the case, what a waste of time, energy, and public and private expense it is to pin one's faith to the very confused state of things such statutes were designed to supersede and endeavor to engraft some part of the displaced old system upon the new one.

There are numberless cases and many text-books declaring that no lessee or person claiming under him can impeach the right or title of the lessor, which is all right as a general proposition. But whether the term "claiming under him" is to be considered in the sense of claiming under him as sublessee only, or that and claiming as owner as well, and if the latter, whether it includes a claimant, as owner, without notice or reasonable means of notice of the limited right of the intermediate possessor, and means that a person in possession as lessee cannot, under any circumstances, without prior restitution, turn permissive into adverse possession and that his grantee of the property, in form in fee, cannot do it, whether he takes with notice of the actual state of the title or without such notice or negligence in the matter,—whether

these and many other questions that might be mentioned, such as whether the basic principle involved is grounded on legal or on equitable estoppel and whether the presumption that the possession of the one who takes as tenant is, till restitution occurs, presumed to be the possession of the landlord—subservient to his right, instead of adverse thereto; and if conclusive, generally, but not universally, what are the exceptions; and whether a person to initiate adverse possession under color of title must act in good faith, and, if so, whether the rule of good faith requires more than a *bona fide* intention to claim the property as owner regardless of the rights of others, or whether it requires an honest reasonable belief that the claim of title is rightful; and whether mere claim as owner under color of title, though with knowledge of invalidity of the claim, is sufficient; and if that be so, whether that rule is universal, extending to possessions obtained by fraud, and many other situations,—are involved in more or less confusion in judicial and text-book authorities.

Can it be wondered at that our lawgivers made an effort to rescue the law which had fallen into such distressing confusion, by the actions of courts and treatment of commentators, and differing statutory regulations, by condemning the system to oblivion and erecting in its stead a simple code of written laws? They having attempted to do that, as all must admit they did, how unfortunate it would be if the persistence of counsel, from time to time, in holding up to view some part of the displaced system with a great array of authorities, many of which have no application by reason of statutory bases, as governing some particular supposed distressing situation, were permitted to prevail, either by reason of mistaken notion that our statutes are not exclusive and to be enforced just as we find them, but are merely supplementary to old principles and to be administered so as to harmonize with adjudications elsewhere—following common-law rules, or statutes differing from ours, or similar statutes which have

failed to accomplish that degree of certainty in the law in-tended, through want of loyalty of courts to the people's will in administering them, or some notion that the limitation statutes instead of being regarded as wise beneficial instru-mentalities of peace may be legitimately viewed in an un-favorable light and bent out of the sphere of their letter to fit some supposed equity,—should prevail. The result would soon be that, notwithstanding the few plain written rules, no one however learned in the law could tell with any reason-able degree of certainty the right of any given situation in advance of a final adjudication. Up to this time there have been but very few and very slight judicial lapses from the statutory line, and such as there have been were speedily rec-tified.

The principle of the doctrine that neither a tenant nor a person claiming under him can set up adverse possession against the landlord, applies to a mortgagor and mortgagee, vendor and vendee under a land contract, and others where the possession of one is obtained under an obligation to return it to its source. But all these situations are covered by the letter of the statute that, "where the occupant or those under whom he claims entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a convey-ance of the premises in question, . . . and that there has been a continued occupation and possession of the premises included in such instrument . . . or some part of such prem-ises under such claim for ten years, the premises so claimed shall be deemed to have been held adversely," etc. No ele-ment of good faith is required because that element in the former law was omitted. The elimination of that, eliminated the basic feature—the foundation of the equitable estoppel, which is the key to the principle for which counsel contend and which is without force any way and has been abandoned in many jurisdictions, as we shall see, where the grantee from

the tenant takes without notice of the limitations of the latter's right and holds adversely and notoriously for the statutory period.

The doctrine of tacking, which cut so important a figure in the early litigation in these *Illinois Steel Company* cases— the doctrine that any kind of a conveyance, so long as it purports to convey title absolutely, satisfies the rule for color of title; the doctrine that good faith or bad faith in taking or holding possession is immaterial, it being understood that all supposed features of the law as it existed at the origin of the statute not found therein are regarded as abrogated; the doctrine that actual possession of part draws to it possession of the balance, within the calls of the deed, and the doctrine that actual, continuous, notorious, hostile possession for the statutory period supersedes the presumption of possession in the holder of the legal title and creates a presumption of hostile possession with all the essentials of title by conquest, as embodied in the quoted language and that of associate sections,— is as plain as English words can make it. All that which is embodied in the statute is the law and a rule of property. All not there, and which is in conflict therewith, is not the law. All efforts to engraft upon the statutes exceptions not made by statute, and all efforts to dignify authorities elsewhere, inconsistent with our system, must fail notwithstanding the particularity of any particular situation. Importance of adhering strictly to our statutes and the logic of our decisions will appear by the following:

Counsel refer to Newell on Ejectment at page 602, to the effect that a tenant is estopped from denying his landlord's title and that the former's assignee is likewise estopped, which, as said before, is all right as a general rule, but it is highly misleading if taken literally as to all situations and as a legal estoppel. The author cites *O'Brien v. Wetherell*, 14 Kan. 616, and *Raley v. Ross*, 59 Ga. 862. The first case is to the effect that where title is conveyed to a person upon con-

dition subsequent expressed in the deed, and such person conveys to another, the latter will take subject to such condition. The second case is to the effect that if a person in possession of land under a land contract dies, his successor is estopped from questioning the title of the executory vendor the same as his predecessor was. Thus it will be seen the general principle from which the author framed his text is that if one claims land as a mere successor in title of another who is under contract to, unconditionally, or contingently, restore possession to a third person from whom it came, whether the succession be that of heir or sublessee, his relation to such third person will be the same as that of his predecessor, and with that we make no question, but it must be viewed in the light of and subservient to other principles and statutes.

Counsel also refer to Jones on Landlord & Tenant to the effect that "the estoppel which binds a tenant against denying the title of his landlord is equally binding on one to whom the tenant has conveyed the premises in fee." Sec. 699. True, till the relation has been superseded by lapse of the period of adverse possession. The text is not inconsistent with the idea that if a person takes from a tenant a fee, in form, and takes possession as owner, notoriously in hostility to the true owner, he thereby initiates adverse possession. The author cites *Emerick v. Tavener,* 9 Grat. 220. The case is grounded on ancient authorities while recognizing the claim that the estoppel rests on a rebuttable presumption which is displaced by proof of taking possession as owner under a deed from the tenant purporting to convey a fee and circumstances characterizing the same operating as a disseisin. The idea that there is a legal estoppel in such cases instead of a mere rebuttable presumption has been repudiated in many cases, especially in recent years. We refer to the following: *Dikeman v. Parrish,* 6 Pa. St. 210, 225; *Townsend v. Boyd,* 217 Pa. St. 386, 395, 66 Atl. 1099; *McDougald v. Reedy,* 71 Ga. 750; *Sherman v. Champlain T. Co.* 31 Vt. 162, 177; *Bradt*

*v. Church,* 110 N. Y. 537, 18 N. E. 357; *Sands `. Hughes,*
53 N. Y. 287; *Whiting v. Edmunds,* 94 N. Y. 309; *Bedlow
v. New York F. D. D. Co.* 112 N. Y. 263, 288, 19 N. E. 800;
*Bradstreet v. Huntington,* 5 Pet. 402, 439, 440.

Counsel further refer to the text in Jones on Landlord &
Tenant, to the effect that possession under a deed from a ten-
ant purporting to convey the fee does not displace the es-
toppel in favor of the landlord even if the grantee takes pos-
session without knowledge of the former's right.    The text
is based on the early cases of *Reed v. Shepley,* 6 Vt. 602, and
*Greeno v. Munson,* 9 Vt. 37.    Referring to such cases we find
they are in conflict with numerous other and more modern
cases we have cited and are not based on any statute and do
not recognize any modification of the ancient doctrine repudi-
ated in *Bradstreet v. Huntington, supra,* and other cases, and
that they were practically overruled by *Sherman v. Cham-
plain T. Co., supra,* opinion by REDFIELD, C. J., where it is
said that the tenant by notice that he no longer holds under
the landlord commits a disseisin, turning the permissive to an
adverse possession, which if continued for the statutory period
will ripen into a title in the possessor's own right, referring
to the federal doctrine announced in *Willison v. Watkins,* 3
Pet. 43, 48, and recognizing that "it is undoubtedly a new
doctrine, and adopted here from a regard to the difference in
our land tenures, and in our civil and social relations and in-
stitutions in many respects, from those in England."

Referring to the cited cases and others it will be seen that
unequivocal disapproval of the tenancy relation, such as deed-
ing the property as owner to another who notoriously takes
possession and claims as owner, is all the notice required.

We might go on, step by step, through all of counsel's cita-
tions with the same result as indicated thus far.    All the
numerous cases we have cited repudiate or explain and mod-
ify the ancient doctrine, sanctioned by many authorities, cited
to our attention, that the possession of a tenant cannot be
turned into an adverse possession either in himself or his suc-

cessor or grantee till possession has first been actually substantially restored to the landlord.

In *Bradstreet v. Huntington,* 5 Pet. 402, 439, the federal supreme court, reaffirming a statement in *Society, etc. v. Pawlet,* 4 Pet. 480, said:

"A possession may be adverse, wherever an ouster may be presumed. . . . It may be adverse, and maintain a bar under the statute, even where ouster is in terms repelled, and not to be presumed from the very circumstances of the case. The words of the court are: 'A vendee in fee derives his title from the vendor; but his title, though derivative, is adverse to that of the vendor. He enters and holds possession for himself, and not for the vendor. Such was the doctrine of this court in *Blight's Lessee v. Rochester,* 7 Wheat. 535.' If this be the correct doctrine of this court, and there can be no doubt it is, it seems to follow that wherever the proof is, that one in possession holds for himself, to the exclusion of all others, the possession so held must be adverse to all others, whatever relation in point of interest or privity he may stand in to others. Such certainly is the view taken of the law in the reasoning of this court in the case of *Willison v. Watkins,* 3 Pet. 43, 53, and with express reference to lessors, mortgagors, trustees, and tenants in common."

We recognize that some of the authorities are to the effect that neither a tenant nor any one claiming under him can initiate adverse possession without at least doing something equivalent to a surrender of possession, as by an unqualified denial of the right of the landlord and bringing home to him knowledge of the adverse claim—giving actual efficient notice of it,—but that is repudiated or explained in other jurisdictions, it being held sufficient if the facts are such as to indicate, circumstantially, with reasonable clearness to the true owner that his right is denied and that the person in possession claims as owner. This, or its equivalent, is found in many cases:

Where one enters as owner "without knowledge of the tenancy" asserting "title on its face adverse to the lessor, though derived from the tenant, his possession will be hostile, if un-

equivocal acts and declarations manifest an intention to hold in spite of all others. *Nor is it necessary, in order to engraft the element of exclusiveness and hostility upon such possession, a party should expressly declare intention thus to hold."* Dikeman v. Parrish, 6 Pa. St. 210, 225.

That is the doctrine of this court plainly declared in *Stevens v. Brooks,* 24 Wis. 326, as will be seen later.

The idea indulged in that there is something particularly sacred in the relation of landlord and tenant, and that a tenant or person claiming under him by deed, who actually and notoriously asserts title in himself, is not entitled to the same protection as any other adverse possessor, in case the true owner sleeps upon his rights for the full statutory period, was repudiated by the supreme court of the United States in the leading case of *Willison v. Watkins,* 3 Pet. 43, 53, this language being used:

"The relations created by a lease are not more sacred than those of a trust or mortgage. . . . If he suffers the tenant to retain possession twenty years after a tenancy is disavowed, and cannot account for his delay in bringing his suit, why should he be exempted from the operation of the statute more than the mortgagor or the mortgagee? We can perceive no good reasons for allowing this peculiar and exclusive privilege to a lessor. . . . In the case in 1 Nott & McC. 374 [*Wilson ads. Weatherby*], the court decide that, where a defendant enters under a plaintiff, he shall not dispute his title while he remains in possession, and that he must first give up his possession, and bring his suit to try titles. To the correctness of this principle we yield our assent, not as one professing to be peculiar to South Carolina, but as a rule of the common law applicable to the cases of fiduciary possession before noticed. It is laid down as a general rule, embracing in terms tenants in common, trustees, mortgagees, and lessees, but disallowing none of the exceptions or limitations which qualify it and exclude from its operation all cases where the possession has become adverse, where the party entitled to it does not enter or sue within the time of the statute of limitations, or give any good reason for his delay; leaving the rule in full

force wherever the suit is brought within the time prescribed by law. To this extent, and this only, the decision would reach. . . . In relation to the limitation of actions for the recovery of real property, we think . . . that the statute ought to receive such a construction as will effectuate the beneficent objects which it is intended to accomplish—the security of titles and the quieting of possessions."

Thus it will be seen full effect was given to the common-law principle incorporated into our statutes at sec. 4216, modified by restricting the former unlimited presumption, as to time, to a period of ten years, that "the relation of landlord and tenant" being once established "the possession of the tenant shall be deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy," or in case of the relation not being evidenced by a written lease, "until the expiration of ten years from the time of the last payment of rent." This significant element, not to be overlooked, was added: "notwithstanding such tenant may . . . have claimed to hold adversely to his landlord; but such presumption shall not be made after the periods herein limited."

That statute was borrowed from New York. It is recognized there that the presumption in favor of the lessor is not a legal estoppel or conclusive. In *Bradt v. Church,* 110 N. Y. 537, 18 N. E. 357, and *Bedlow v. New York F. D. D. Co.* 112 N. Y. 263, 19 N. E. 800, cited in the former opinion, it was expressly held that it would yield to proof of actual, notorious possession for the statutory terms in defiance of the landlord's title, in harmony with other cases, particularly *Willison v. Watkins,* 3 Pet. 43, to the effect that proof of actual, notorious, hostile possession for the statutory period, characterized by unequivocal, open, notorious treatment of the property as owner, displaces the statutory the same as it does the common-law presumption which it declares so far as the lawgivers saw fit to adopt it. That is in harmony with sec. 4210, Stats. (1898), which did not exist in New York

during the time the early decisions cited to our attention from that state were made, that proof of continuous adverse possession for ten years under a written instrument supersedes the presumption of possession in the holder of the legal paper title.

It must be remembered that the doctrine in New York, at the time many of the decisions called to our attention were made, was that there must be a taking of possession in honest belief of its being rightful and reliance thereon. *Jackson v. Andrews,* 7 Wend. 152; *Livingston v. Peru Iron Co.* 9 Wend. 511; *Clapp v. Bromagham,* 9 Cow. 530, 557. That was later repudiated and held to be inconsistent with the statutes. The court in *Humbert v. Trinity Church,* 24 Wend. 587, 608, speaking by Cowen, J., said:

"Statutes limiting real actions generally operate in favor of the men who cultivate the soil, or inhabit the dwelling houses of the country; and cannot discriminate between the rich and the poor, the powerful and the weak, the wise and the ignorant." They were "framed on the most salutary principle of general policy. They have, with great propriety, been termed statutes of repose. They fix a term broadly marked and easy of proof, at which litigation is arrested; beyond which every man is enabled to pronounce that his possessions are no longer open to disturbance. . . . Neither open wrong nor established fraud" can "be admitted as an exception without striking at the principle itself; neither can be received without proof, and that would bring back the very danger which the statutes were designed to obviate. . . . In the previous case of *Jackson v. Andrews,* 7 Wend. 152, even actual possession claimed under a deed was denied to be adverse for the purpose of disqualifying the real owner to convey, though clearly" by later adjudications "that would not be so of a deed invoked to make out a possession within the statutes of limitations. . . . The question is on the *quo animo,* the intent; not, I take it, as suggested in *Livingston v. Peru Iron Co.* 9 Wend. 511, the intent to claim honestly; but the intent to claim at all, right or wrong, with or without knowledge that another has title." After the lapse of the statutory period "it would be dangerous to open an inquiry upon the *bona fides* of the defendant's claim."

That has been often followed, it being said that under the statutes if one enters under color of title claiming ownership the possession will be adverse however groundless the title.

It must follow from what has been said, regardless of apparently conflicting authorities, that, by statute, if a person under any kind of a written instrument sufficient to convey title to realty and purporting to do so takes possession of a tract of land described therein, as owner, even from a tenant, and regardless of good faith, openly and hostile to the possessor of the title, under such circumstances as to challenge the right of the latter to his knowledge, if he pays reasonable attention to his affairs, adverse possession is initiated, which, if continued for the statutory term, displaces the presumption in favor of the true owner, both under sec. 4210 and sec. 4211, as well, and erects in its stead under such sections a presumption that all the requisites of title by adverse possession have been complied with, as held by numerous decisions of this court. *Ill. S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402.

Notwithstanding the learned counsel's persistence in arguing that *Pulford v. Whicher,* 76 Wis. 555, 45 N. W. 418, is contrary to the foregoing and supports the claim that a grantee, in form in fee, if a tenant, cannot maintain adverse possession as to the landlord, we must adhere to our former view that it does not deal with the present situation at all. It is merely to the effect that, under the peculiar facts of that case, in equity the tenancy was not superseded by possession under a tax deed, so as to cut off the right of the owner under secs. 1189, 1210*d,* and 1210*e,* R. S. 1878, to avoid the taxes and deeds for illegality. The tenant under a fraudulent agreement turned over his tenancy, not by a conveyance in any form, to another who had obtained a tax deed upon the premises, and subsequently obtained a second tax deed upon a tax certificate owned by such other at the time of the commission of the wrong. The action was to avoid the tax deeds and for an accounting. The subject of adverse possession,

under the statutes here involved, was not in the case at all. The action was commenced within about eight years after the date of the first tax deed and the question was whether the collusive possession, which was entirely unknown to the plaintiff who resided in another state and relied upon an agent to deal with the tenant and pay the taxes, started the statute of limitations running in favor of the illegal tax claims. The complaint set forth the facts in much detail. The issue was raised by demurrer, pleading the tax-claim limitation statutes referred to, and the demurrer was overruled. With this full statement of the case, which is not disclosed by the report but is in connection with the printed case and briefs used on the appeal, which are at hand, we confidently reiterate what was said in the former opinion, that it has not the remotest bearing on the one before us. We apprehend that, had the nature of the *Pulford Case* been fully appreciated, it would not have been regarded as a straw to catch at as to the claim now made.

*Pulford v. Whicher, supra,* is the only case decided by this court in the sixty and more years of its history which counsel even claim supports their view that adverse possession cannot be predicated on a conveyance from a person in possession, bearing such relation to the true owner as to be under contract to restore possession to him. All the other cases here, comprising very many holding that a grantee, in form, of a fee taking possession under the grant as owner initiates adverse possession, regardless of his knowledge of the true state of the title, are contrary to counsel's contention, except *Watts v. Owens,* 62 Wis. 512, 520, 22 N. W. 720, which went off on the old doctrine that there can be no adverse possession in the absence of honest belief that the right coincides with the possession, which is out of harmony with cases before decided and years ago was repudiated.

One of the first cases here involving the question under discussion shows, most clearly, that the court started with the

idea that adverse possession under the ten-year statute is referable to the deed under which the entry is made and is not to be defeated merely because the grantee was under contract to restore possession to the true owner nor because of want of actual notice of the hostile claim to the owner. We refer to *Stevens v. Brooks,* 24 Wis. 326, before alluded to. The force of that decision can be appreciated when it is kept in mind that the rule contended for on common-law principles applies to the relation of mortgagor and mortgagee as well as to landlord and tenant. The claim was there made that the right of a grantee from a mortgagor in possession is measured by the right of the grantor, and as the latter's possession is not adverse the former cannot be. To that the court answered:

"Where one enters upon land under a recorded deed, his entry and claim are referred to that deed, and measured by it. If it is a warranty deed, purporting to give him a complete title, his possession becomes adverse to all the world. . . ." The mortgagee's "assuming to convey the fee of the land by warranty deed was, in itself, as decisive and clear a denial of the relation of mortgagor and mortgagee as can be required. And the purchaser entering under such warranty deed is presumed to claim the title which the deed professes to give him."

To the claim that possession of one under contract to restore to the owner cannot become adverse till notice to such owner of a denial of his right and intention to claim adversely to him, which had support in authorities cited, as it has in many cited now, the court said:

"I am not aware that, where one enters upon land claiming a perfect title, he is bound to give any other notice to other claimants than the possession itself, in order to set the statutes running, there having been shown no such previous relation between him and them as would require such notice. They must take notice at their peril of the real character of his possession. Whenever a contest arises, he may show it to have been adverse, if he can; and, in order to do that, may show under what claim of title he entered."

The mere circumstance of the recording of the deed was not spoken of as essential, but only as evidentiary, as the following will indicate:

"And where he entered under a recorded deed, he may show that. It is not shown to prove notice, as such, but to show the claim of title under which he held possession."

The logic of *Stevens v. Brooks,* 24 Wis. 326; *Willison v. Watkins,* 3 Pet. 43; and *Bradstreet v. Huntington,* 5 Pet. 402, is that the moment a tenant assumes to, and does, in form, convey in fee the property of which he is possessed and his grantee enters as owner under the deed, a fraud is committed upon the true owner entitling him to sue at once in ejectment or in trespass upon the theory of his having been disseised. That was the mooted question settled in *Willison v. Watkins.* The principle of the federal cases is fully indicated by the quotations made and this further from *Bradstreet v. Huntington:*

"The whole inquiry is reduced to the fact of entry and the intent to usurp possession. These are the elements of actual disseisin; and yet we have seen that one may become a disseisor, though entering peaceably under a void deed or a void feoffment or by fraud; and that the intention to disseise may, under circumstances, be imputed to those who by a general rule of law are in ordinary cases incapable of willing, or not bound by an exercise of the will. . . . The fact to be determined is whether the party holds possession for himself or for another; and this can only be determined by evidence, or circumstances to prove the one or the other. . . . Actual ouster is clearly not requisite, either to be presumed or proved; adverse possession may exist without it; and notice, as a fact, may clearly be deduced from circumstances as well as positively proved."

That discussion was directed to the question of whether actual adverse possession can "supply the exigency of actual ouster or notice," and it was held that it could.

The above statement was fully recognized by this court in *Ackerman v. Lyman,* 20 Wis. 454, 456, it being held that a

trespasser cannot be converted into a tenant without his consent.    So here, the respondents, who the moment they openly entered as owners disseising the appellant became trespassers and could not without their consent be converted into tenants.

The foregoing was·fully appreciated by Judge REDFIELD in *Sherman v. Champlain T. Co.* 31 Vt. 162, to be the logic of the federal cases; which he was pleased to denominate, as before indicated, "a new doctrine," though it was not so regarded by the federal court.    To indicate the precise relations between the former landlord and a usurper, as in this case, the following from *Willison v. Watkins, supra,* was quoted:

"Had there been a formal lease for a term not yet expired, the lessee forfeited it by this act of hostility; had it been a lease at will from year to year, he was entitled to no notice to quit before an ejectment.    The landlord's action would be as against a trespasser; as much so as if no relation had ever existed between them."

So the nature of respondents' possession is referable to their deed and the characteristics of the occupancy, not to the mere right of the grantor.    The fact that they claimed openly and notoriously in all respects as an owner would and thus became disseisors regardless of any actual ouster, making themselves trespassers, who could not, at the election of the true owner alone, be turned into tenants, rendered them adverse possessors under secs. 4211 and 4212, Stats. (1898), so that a continuance of the condition for the statutory period prescribed in sec. 4215, the circumstances being such as must have brought such condition home to the true owner if it was paying ordinary attention to its affairs, displaced the presumption under sec. 4216, working a complete transition of the title by operation of law.

Cases out of harmony with the foregoing are out of harmony with our statutes and the logic of our decisions.    If it be as suggested, that if this court adheres to the former view it will work repose to the titles involved in some eighty pend-

ing cases, that cannot well be regarded as justification for changing the statute and going contrary to the logic of the past on this subject. If, as said, the result of the court's adherence to the statute and its previous administration thereof will create such repose, it is a striking indication of the wisdom of the law.

The supposed inequity of applying the statutes, as indicated, grows out of misconception, it seems, of the policy of the law and mistaken notion that they are susceptible of being minimized in their literal effect, out of compassion to owners of property liable to lose by laches. Apt comment on that is found in the opinion by Mr. Justice DODGE in *McCann v. Welch,* 106 Wis. 142, 81 N. W. 996, quoted from, at length, in the former opinion. Other courts made like comments. In *Bell v. Morrison,* 1 Pet. 351, 360, the federal court, speaking by Mr. Justice STORY, used this language:

"It has often been matter of regret, in modern times, that, in the construction of the statute of limitations, the decisions had not proceeded upon principles better adapted to carry into effect the real objects of the statute; that, instead of being viewed in an unfavorable light, as an unjust and discreditable defense, it had received such support as would have made it, what it was intended to be, emphatically, a statute of repose. It is a wise and beneficial law. . . . The English decisions upon this subject have gone great lengths—greater, indeed, in our judgment, than any sound interpretation of the statute will warrant; and, in some instances, to an extent which is irreconcilable with any just principle. There appears, at present, a disposition on the part of English courts to retrace their steps; and, so far as they may, to bring back the doctrine to sober and rational limits. The American courts have evinced a like disposition."

Any other result than that herein indicated would fail to give effect to the statutes and put secs. 4210, 4211, and 4213 in direct conflict with sec. 4216. Under the former, one having been in actual continuous adverse possession of realty under color of title for the statutory period would be the owner

thereof, while under the latter he would not under any circumstances.

Our conclusion gives effect to the statutes bearing on the subject as they are written. A person whose possession is usurped by another may prove his right, *prima facie,* by proof of the former condition, the title in that case resting on presumption. The now paramount presumption may be displaced under sec. 4210 by mere establishment of the legal title in the one dispossessed, creating a presumption of seisin in the holder of such title within the period of the statute of limitations, which is rebuttable as in case of the preceding presumption. The now paramount presumption may be displaced under secs. 4210 and 4211 by mere proof of continuous ten-year possession pursuant to an entry, exclusively based on color of title, thus creating a presumption that the possession for such period has been characterized with all the essentials of disseisin of every other claimant of the property, which presumption is rebuttable as before and may be by proof in the absence of efficient explanatory circumstances, that the purported conveyance was a medium of conveying a tenancy created by the holder of the legal title and existing at the time the conveyance, creating a presumption under sec. 4216 that the possession under such conveyance was the possession of the holder of the legal title notwithstanding a mere claim of adverse possession—subject to be rebutted as before by proof, as a verity, that the possession was taken under such conveyance as owner actually adverse to all the world and in open notorious defiance of other claimants, and a continuation of such condition of actual notorious adverse possession, undisturbed for the statutory period of ten years. This last, as will be seen, is not a case of a tenant or his successor in possession, originating a claim of adverse possession, but of a possession commencing under an assertion, in the very nature of the case, of hostile title, the grantee having no notice of the tenancy and under such circumstances, as in this

case, necessarily bringing home to the holder of the legal title notice of the hostile invasion. As said in the cited cases, the adverse character of the holding effectually disseises such holder and sets the statutes of limitations running.

Without further discussing the subject it is the opinion of the court that the conclusion reached on the hearing is right and that the motion for a rehearing must be denied

*By the Court.*—So ordered.